**ORIGINAL**

VENETIA K. CARPENTER-ASUI
A Law Corporation

VENETIA K. CARPENTER-ASUI   6901
Haseko Center
820 Mililani Street, Suite 812
Honolulu, Hawaii 96813
Telephone: (808) 523-6446
Facsimile: (808) 523-6727

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 09 2006

at 8 o'clock and 58 min. P M
SUE BEITIA, CLERK

Attorney for Plaintiff
PETER G. SEBALA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PETER G. SEBALA, | ) | CIVIL NO. 04-00404 SPK-LEK |
| | ) | |
| Plaintiff, | ) | PLAINTIFF'S MEMORANDUM IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| vs. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT; CERTIFICATE OF |
| DR. JAMES G. ROCHE, | ) | SERVICE |
| SECRETARY, DEPART- | ) | |
| MENT OF THE AIR FORCE, | ) | |
| | ) | |
| Defendants. | ) | Hearing |
| | ) | Date: January 27, 2006 |
| | ) | Time: 10:00 a.m. |
| | ) | Judge: Hon. Samuel P. King |
| | ) | |
| | ) | Trial: 2/7/06 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff PETER G. SEBALA ("Plaintiff"), by and through his attorney, hereby files Plaintiff's Memorandum In Opposition to Defendant's Motion for Summary Judgment filed on September 30, 2005.

## I. FACTS

On 8/27/49 Plaintiff was born. (Def concise stmt ex 1; Decla Pl)

From 1970 to 1971, with one year and seven months of creditable service, Plaintiff served in the U.S. Army in the Vietnam War and received an honorable discharge. Plaintiff was awarded the:

1. National Defense Service Medal,
2. Vietnam Service Medal with a Bronze Service Star,
3. Republic of Vietnam Campaign Medal, and
4. Sharpshooter (Rifle).

(Ex C; Pl decla; Def concise stmt ex 1)

From 1967 to 1994 Plaintiff was employed by Oahu Sugar Company for 27 years working in tire maintenance and preventative maintenance. Plaintiff also held the position of Tire Shop Leader with duties including repair and maintenance of tires on all vehicles and equipment in the shop and field; performing scheduled maintenance on all vehicles and equipment including oil and filter changes; inspecting and lubricating chassis components; and conducting training of new employees. (Def concise stmt ex 5; Decla Pl)

On 1/23/02 Plaintiff received a full-time "temporary" one year appointment as a Mobile Equipment Servicer WG-5806 working at the Hickam Air Force Base in Honolulu, Hawaii. (Def concise stmt ex 1; Pl decla)

On 8/11/02 Plaintiff's SF-50 rated Plaintiff's performance as a temporary Mobile Equipment Servicer WG-5806 as "[w]ork performance at an acceptable level of competence." (Ex B)

On 10/3/02 Plaintiff received a mid-year Civilian Progress Review Worksheet which rated his work successfully, with a written comment by his immediate supervisor Randall Nunes which stated, "Good Job!" (Def concise stmt ex 3)

From 3/14/03 to 3/20/03 Plaintiff's Mobile Equipment Servicer WG-5806 position, as a "permanent" status, was posted as a Vacancy Announcement. (Def concise stmt ex 4)

Plaintiff applied for the "permanent" Mobile Equipment Servicer WG-5806 position and submitted his resume, which included the work he performed in the "temporary" position right before the Vacancy Announcement was posted. (Def concise stmt ex 5)

In a letter dated April 7, 2003 Plaintiff was notified that Christopher Vargas, age 25, was hired for the permanent Mobile Equipment Servicer position instead of Plaintiff, age 53. (Def concise stmt ex 6)

Upon receiving Supervisor Randall Nunes letter dated April 7, 2003, Plaintiff telephoned Supervisor Nunes who told Plaintiff that he "hired the most qualified person for the job." (Decla Pl)

On May 4, 2003 Christopher Vargas, age 25, began working in the permanent Mobile Equipment Servicer WG-5806 position. (Def concise stmt #11)

In April-May 2003, Plaintiff's co-worker Michael Oyadomori informed Plaintiff that he asked Supervisor Randall Nunes why he hired Christopher Vargas who was inexperienced for the Mobile Equipment

3

Servicer WG-5806 position. Supervisor Randall Nunes replied "[w]ell the guy younger and he's married, got family." (Ex F, p42)

In April 2003 Plaintiff reported the age discrimination to:

1. Tonya Stels - Hickam Air Force Base Hiring Office,
2. Federal Job Information 541-2791 (recording),
3. Department of Veterans Affairs,
4. Hickam Air Force Base Civilian Personnel Employment Office "Greg",
5. Hickam Air Force Base Civilian Personnel Employment Office "Beverly",
6. Supervisor Randall Nunes,
7. Work Links Veterans Outreach Program, Melody Hudson,
8. Labor & Hiring Office, Gill Hough,
9. Senator Daniel Akaka,
10. Senator Daniel Inouye,
11. Congressman Ed Case,
12. Congressman Neil Abercrombie.

(Ex D; Decla Pl)

On March 16, 2005 Magistrate Judge Leslie E. Kobayashi issued an Order Denying Defendant's Motion to Dismiss based on "untimeliness." (Ex E; Decla Pl)

## II. STANDARD OF REVIEW

"Summary judgment should be granted only if 'the pleadings, depositions, answers or interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'"

4

Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists, and summary judgment is inappropriate, if there is a fact in contention which could affect the outcome of the suit under the governing law, and the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Lindahl v. Air France, 930 F.2d 1434, 1436 (9th Cir. 1991).

Plaintiff's discrimination claims are based on a theory of disparate treatment -- he asserts that Defendant treated him less favorably than a younger employee - Christopher Vargas (age 25), because of Plaintiff's age (53). To prevail on a claim of disparate treatment based on an impermissible factor such as age, a plaintiff must prove his employer's challenged decision was motivated by intentional discrimination. Washington v. Garrett, 10 F.3d 1421, 1431-32 (9th Cir. 1993).

Because in most employment discrimination cases direct evidence of the employer's discriminatory motivation is unavailable or difficult to obtain, the Supreme Court has set forth an indirect method of proof which relies on presumptions and shifting burdens of proof. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Under this familiar framework, to survive summary judgment in a disparate treatment case, a plaintiff must carry the initial burden of establishing a prima facie case of employment discrimination. Washington v. Garrett, 10 F.3d at 1432. By establishing the prima facie case, the plaintiff creates a presumption that the employer engaged in intentional discrimination. Texas Dep't of Community Affairs, 450 U.S. at 254. However, if the employer articulates a legitimate, nondiscriminatory reason for its employment decision, the presumption of unlawful discrimination "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2749 (1993). The plaintiff must raise

5

a genuine factual issue as to whether the employer's proffered reason is a pretext for discrimination. Washington, 10 F.3d at 1432. "If [the] plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to determine which story is to be believed." Id.

"Because intent is at issue in discrimination cases, summary procedures should be used 'prudently' and 'judiciously' in such cases." Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990); Foresberg v. Pacific Northwest Bell Telephone Co., 840 F.2d 1409, 1419 (9th Cir. 1988). "We have previously explained that '[w]e require very little evidence to survive summary judgment' in a discrimination case because the ultimate question -- whether the employer intended to discriminate -- is a pure question of fact which usually can be resolved only through a 'searching inquiry' conducted by the factfinder upon a full record. Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1111 (9th Cir. 1991).

## III. ARGUMENT

### A. NATIONAL ORIGIN CLAIM DISMISSED VIA STIPULATION - MOOT ISSUE

Defendant's first argument is that the national origin claim should be dismissed. (msj p6-8) Attached as exhibit "A" is a stipulation signed by Defendant's Counsel dated 9/21/05 dismissing that claim - issue is moot.

### B. PRIMA FACIE CASE - AGE DISCRIMINATION

#### 1. FEDERAL EMPLOYEES ARE PROTECTED BY ADEA

This case concerns a claim of age discrimination in violation of s15, the Federal employees' component of the Age Discrimination in Employment Act (hereinafter "ADEA") of 1967, 81 Stat. 602, as added by the Fair Labor Standards Amendments of 1974, 88 Stat. 74, and amended, 29 U.S.C. s633a. *Stevens v. Dept of Treasury*, 500 US 1, 111 S.Ct. 1562, 1565 (1991).

### 2. PRIMA FACIE CASE

Under the ADEA, it is "unlawful for an employer... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Reeves v. Sanderson Plumbing*, 530 US 133, 141, 120 S.Ct. 2097, 2105 (2000). "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Id; Hazen Paper Co. v. Biggins*, 507 US 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). "That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Ibid.*

"*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases." *St Mary's Honor Center v. Hicks*, 509 US 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "First, the plaintiff must establish a prima facie case of discrimination." *Ibid; Texas Dept of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff must establish that: 1) at the time he was not hired, he was a member of the class protected by the ADEA (at least 40 years old) 29 U.S.C. s631(a) [Plaintiff Peter Sebala was 53 at the

7

time he was not hired]; 2) he was otherwise qualified for the position of Mobile Equipment Servicer [Plaintiff had 25 years of experience]; and 3) he was not hired by Defendant [Defendant hired Chris Vargas a 25 year old instead].

### a) Plaintiff proves 1st element of prima facie case

The first element of Plaintiff's prima facie case is that at the time he was not hired, he was a member of the class protected by the ADEA (at least 40 years old) 29 U.S.C. s631(a). It is undisputed that Plaintiff's birthdate is 8/27/49 and that he was 53 years of age on 5/4/03 when Christopher Vargas age 25 was hired for the permanent Mobile Equipment Servicer WG-5806 job instead of Plaintiff. (Def concise stmt ex 1; Decla Pl)  This element is not in dispute.

### b) Plaintiff proves 2nd element of prima facie case

The second element of Plaintiff's prima facie case is that he was qualified for the position of Mobile Equipment Servicer on the date he was not hired 5/4/03. It is undisputed that: 1) Plaintiff had 25 years of experience working at Oahu Sugar Company from approximately 1964 to 1994, which included 26 years of working with tires and heavy vehicles, including holding the position of Tire Shop Leader (Def concise stmt ex 5; Decla Pl); 2) Plaintiff was hired by Defendant for the temporary Mobile Equipment Servicer WG-5806 job from 1/23/02 to 1/22/03 and therefore was deemed qualified by Defendant (Def concise stmt ex 1; Decla Pl); and 3) during the one year that Plaintiff held the temporary Mobile Equipment Servicer WG-5806 position he received acceptable job performance ratings while employed by Defendant from his Supervisor Randall Nunes who

8

wrote on Plaintiff's evaluation "Good Job!" (Def concise stmt ex 3; Decla Pl)

### c) Plaintiff proves 3rd element of prima facie case

The third element of Plaintiff's prima facie case is that he was not hired by Defendant on 5/4/03 for the permanent Mobile Equipment Servicer WG-5806 job. Instead, Supervisor Randall Nunes hired Chris Vargas, age twenty-five (25), a younger, less experienced person. (Def concise stmt ex 6; Decla Pl)

### 3. BURDEN OF PRODUCTION SHIFTS TO DEFENDANT

The burden of production then shifts to Defendant to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine supra* at 254, 101 S.Ct. 1089. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *St. Mary's Honor supra* at 509, 113 S.Ct. 2742. "The trier of fact may consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom... on the issue of whether the defendant's explanation is pretextual.'" *Burdine supra* at 255, n. 10, 101 S.Ct. 1089.

"[I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." 530 US AT 147. "[T]he trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty

9

about a material fact as 'affirmative evidence of guilt.'" *Wright v. West*, 505 US 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992).

Once Plaintiff has establishes his prima facie case above, the burden of production shifts to Defendant to articulate a non-discriminatory reason for its adverse employment decision. Here, Defendant alleges that Plaintiff was not hired due to his:

1. "prior work experience"
2. "instances of insubordination" and
3. "low performance feedback."

(Def's msj p9-10) Notably, Defendant does not explain what it means by its three proferred reasons, it simply directs the reader to its exhibits #3, and #7.

Defendant's ***first*** piece of evidence, its exhibit #3, is Plaintiff's Civilian Progress Review Worksheet dated 10/3/02 wherein Supervisor Nunes rated Plaintiff's work performance at acceptable levels and even wrote the words "Good Job!" Obviously, this evidence proves that Plaintiff was doing well in the performance of his job.

Defendant's ***second*** piece of evidence, its exhibit #7, is a self-serving affidavit from the individual in this lawsuit that is accused of committing the age discrimination at issue here - Supervisor Nunes. The affidavit which is dated September 27, 2005, was written in support of Defendant's motion for summary judgment in an attempt to vindicate himself by making false accusations against Plaintiff which were never documented anywhere in Plaintiff's entire employment record.

Thus, Defendant's only proffered evidence that it did not commit age discrimination is a "favorable" mid-term job evaluation and a self-serving affidavit from the employee who is accused of committing the age

10

discrimination, who makes unspecified allegations against Plaintiff without one single document to support the generalizations contained in his affidavit. That is not evidence. In fact, the only thing it does prove is that there was absolutely nothing in the record to support Defendant's rejection of Plaintiff for the position, other than his age.

### 4. DEFENDANT'S EXPLANATION WAS PRETEXT FOR UNLAWFUL AGE DISCRIMINATION

Clearly, as established above, Defendant's proffered explanation for not hiring Plaintiff is pretext for unlawful discrimination. The following are reasons why Defendant's explanation is unsupported by the evidence:

*First*, When Plaintiff telephoned Supervisor Nunes upon receiving his letter informing Plaintiff that he was not hired, Supervisor Nunes replied, "I hired the most qualified person for the job." This is clearly pretext for age discrimination as Plaintiff had 27 years of experience working for Oahu Sugar Company from 1967 to 1994 working in tire maintenance and preventative maintenance. Plaintiff also held the position as Tire Shop Leader with duties including repair and maintenance of tires on all vehicles and equipment in the shop and field; performing scheduled maintenance on all vehicles and equipment including oil and filter changes; inspecting and lubricating chassis components; and conducting training of new employees. (Def concise stmt ex 5; Decla Pl) Additionally, Defendant hired Plaintiff for the temporary Mobile Equipment Servicer WG-5806 position for the previous year as a temporary hire, thus giving him 28 years of experience. Supervisor Nunes instead hired Chris Vargas, age 25. Plaintiff had more years of work experience in this field, than Chris Vargas had been alive.

inspecting and lubricating chassis components; and conducting training of new employees. (Def concise stmt ex 5; Decla Pl) Additionally, Defendant hired Plaintiff for the temporary Mobile Equipment Servicer WG-5806 position for the previous year as a temporary hire, thus giving him 28 years of experience. Supervisor Nunes instead hired Chris Vargas, age 25. Plaintiff had more years of work experience in this field, than Chris Vargas had been alive.

*Second*, as further evidence of pretext, Defendant produced no evidence that Plaintiff was not performing his job as a one-year appointment Mobile Equipment Servicer WG-5806 properly. In fact, the documentary evidence submitted by Defendant proves that Plaintiff was performing well. On 8/11/02 Plaintiff's SF-50 rated Plaintiff's performance as a temporary Mobile Equipment Servicer WG-5806 as "[w]ork performance at an acceptable level of competence." (Ex B) Again, on 10/3/02 Plaintiff received a mid-year Civilian Progress Review Worksheet which rated his work successfully, with a written comment by his immediate supervisor Randall Nunes which stated, "Good Job!" (Def concise stmt ex 3)

*Third*, as further evidence of pretext, Christopher Vargas (age 25) was **not** qualified for the position of Mobile Equipment Servicer WG-5806. Co-workers Ace Suares and Michael Oyadomori were assigned to train Christopher Vargas *after* he was hired for the permanent Mobile Equipment Servicer WG-5806 job:

Oyadomori: Chris has hard time working on that, you know, to learn. He has hard time working on the tires...
(Ex F, p13 lines 19-21)

Counsel: So did he [A. Suares] say what he [C. Vargas] had a hard time learning about the tires?

12

| | |
|---|---|
| Oyadomori: | Split rims... |
| Counsel: | And what was he having trouble doing, taking it apart or putting it together? |
| Oyadomori: | Taking them apart and putting them together... |
| Counsel: | Did Ace seem frustrated about how the training was going? |
| Oyadomori: | Sometime, yeah, Ace come up and tell me that this guy no listen, no like train 'em... |
| | (Ex F p13 line 25 to p14 line 17) |
| Oyadomori: | ...You could see the guy got frustrated, you know, working on tires. I guess after a while once you learn, you know, took 'em quite a while. |
| Counsel: | How long did it take him? |
| Oyadomori: | Maybe about a month. |
| Counsel: | Is that a long time? |
| Oyadomori: | Yeah. |
| | (ex F p14 line 22 to p15 line 4) |
| Oyadomori: | No. He [C. Vargas] looked inexperienced. |
| Counsel: | And can you describe how he looked inexperienced? What does that mean? |
| Oyadomori: | Just observing him, you can tell when somebody is experienced or inexperienced. Because I operate the machine and I worked the tire shop before, you know. |
| Counsel: | For five years? |
| Oyadomori: | So right off the bat you can watch somebody and you know that guy is inexperienced... |
| | (ex F p29 line 20 to p30 line 4) |

13

| | |
|---|---|
| Counsel: | So he had a couple of months work under his belt in the tire shop? ...And did it seem like he was learning the job or he still was inexperienced? |
| Oyadomori: | He didn't know how to do it, mount the tires. |
| | (ex F p38 lines 12-15) |
| Counsel: | Did you ever hear anybody else say that Mr. Vargas was inexperienced working in the tire shop? |
| Oyadomori: | Everybody knew that, that he was -- you know, he wasn't experienced. |
| | (ex F p39 lines 18-22) |

**Fourth**, as further evidence of pretext, Christopher Vargas displayed angry outbursts in the workplace, especially out of frustration at not knowing how to perform the Mobile Equipment Servicer WG-5806 duties:

| | |
|---|---|
| Oyadomori: | ... He get angry. Mr. Vargas get angry... |
| Counsel: | Mr. Vargas got angry-- |
| Oyadomori: | That's what Ace said. I could see it, too from across the way... |
| | (ex F p14 line 17-22) |
| Counsel: | What could you see that made you think that Mr. Vargas was frustrated? |
| Oyadomori: | By his [C. Vargas] face and he's [Ace Suares] coming up to me and telling me Mr. Vargas get angry... |
| Counsel: | So his face looked what, frustrated? |
| Oyadomori: | Looked angry. Angry. |
| | (Ex F p15 line 5-12) |

14

Oyadomori:   ...he get angry at the machine and he get mad at Ace, angry at Ace...
(ex F p32 lines 23-24)

Oyadomori:   ...Ace told me that Mr. Vargas was pissed off at me, started swearing and all that, saying that, you know, [inaudible] he sweared about me to Mr. Soares, cussing me out about the tires...
(ex F p35 lines 11-15)

Oyadomori:   Well, when I see him, he looked mad or angry working in the tire shop. Frustrated. You know when you're frustrated you look like you disappointed, or you angry, you know.
(ex F p36 lines 5-8)

Oyadomori:   ...the guy get angry, you know, get frustrated. Mr. Soares don't want to sign him off.
(ex F p44 lines 16-18)

Christopher Vargas employment record for workplace violence incidents are well documented in his personnel file by Supervisor Nunes, including:

4/30/04   "interview with employee, alleges Mr. Ace Suares-Haoe threatened him verbally, after careful review of all statements and actions (threatening case, employee and Mr. Soares agree to dissolve this case due to misunderstanding between each other"

1/12/05   "counseled employee on loosing his temper (ie...swearing, challenging my authority about his taking leave)"

4/12/05   "review 860A feedback w/ employee (continues to work on temper control & directives)"

15

| | |
|---|---|
| 5/12/05 | "counseled employee about anger management incident w/ Ace Suares-Haoe 5/12/05" |
| 5/19/05 | "issued letter for counseling and brief employee on proper conduct" |

(Ex G)

*Fifth,* as further evidence of pretext, Supervisor Nunes told Michael Oyadomori that he hired Christopher Vargas (age 25) instead of Plaintiff because "the guy younger and he's married, got family." (Ex F, p42 lines 5-6)

Thus, based on the above evidence which includes direct evidence of age discrimination statements by Defendant's deciding official in the hiring process, material questions of fact exist as to whether Defendant intended to discriminate against Plaintiff on the basis of his age, and a trial is required.

## IV.   MAGISTRATE KOBAYASHI RULED PLAINTIFF'S COMPLAINT WAS "TIMELY"

Defendant attempts to relitigate a previously decided issue in its concise statement questions #12 to #17. On 10/15/04 Defendant filed a motion to dismiss on the basis of administrative timeliness. Defendant's motion was denied in an Order by Magistrate Judge Leslie E. Kobayashi on 3/16/05 attached hereto at exhibit E.

## V.   CONCLUSION

Based on the material questions of fact in this case, a trial is required and Defendant's motion for summary judgment must be denied.

16

DATED: Honolulu, Hawaii, January 9, 2006.

_____
VENETIA K. CARPENTER-ASUI
Attorney for Plaintiff
PETER SEBALA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was duly served upon the following person by U.S. Mail prepaid postage or messenger delivery:

R. Michael Burke, Esq.
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850

Attorney for Defendant
JAMES G. ROCHE, DR., SECRETARY,
DEPARTMENT OF THE AIR FORCE

DATED:   Honolulu, Hawaii January 9, 2006.

_____
VENETIA K. CARPENTER-ASUI
Attorney for Plaintiff
PETER SEBALA