VENETIA K. CARPENTER-ASUI
A Law Corporation

VENETIA K. CARPENTER-ASUI     6901
Haseko Center
820 Mililani Street, Suite 812
Honolulu, Hawaii 96813
Telephone:  (808) 523-6446
Facsimile:   (808) 523-6727

Attorney for Plaintiff
PETER G. SEBALA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 2 5 2005

at ___6 o'clock and 37 min. ___ M
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PETER G. SEBALA, | ) | CIV. NO. 04-00404 SPK LEK |
| | ) | |
| Plaintiff, | ) | PLAINTIFF'S |
| | ) | MEMORANDUM IN |
| | ) | OPPOSITION TO |
| vs. | ) | DEFENDANT'S MOTION |
| | ) | TO DISMISS; |
| RANDELL NUNES; JAMES G. | ) | DECLARATION OF |
| ROCHE, DR., SECRETARY, | ) | PLAINTIFF; EXHIBITS A-M; |
| DEPARTMENT OF THE AIR | ) | CERTIFICATE OF |
| FORCE, | ) | SERVICE |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Comes now, PETER G. SEBALA ("Plaintiff") in the above-entitled

case and files Plaintiff's Memorandum in Opposition to Defendant's Motion

to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of


EXHIBIT D

subject matter jurisdiction because Plaintiff failed to timely and properly exhaust his administrative remedies filed on October 15, 2004.

## I.    **FACTS**

1.    Plaintiff's birthdate is August 27, 1949, and is 55 years of age. (Decla Pl)

2.    Plaintiff is a Vietnam Veteran. (Decla Pl)

3.    Plaintiff worked for twenty-seven (27) years for Oahu Sugar in the Preventive Maintenance Tire Shop from 1967 to 1994. (Decla Pl)

4.    Plaintiff was hired for a temporary NTE 1 year emergency hire appointment to a Mobile Equipment Servicer position (WG-5806-06) for the period of January 2002 through January 2003. Plaintiff was told that the position would terminated and then re-opened as a permanent position. (Ex A-C)

5.    Between February 2003 and April 7, 2003, Plaintiff applied for the same position advertised as a permanent position, Mobile Equipment Servicer (WG-5806-06). (Decla Pl)

6.    In a letter dated April 7, 2003, received by Plaintiff on April 8, 2003, Plaintiff was notified that someone else was hired for the Mobile Equipment Servicer (WG-5806-06) position. (Ex D)

7.    On April 8, 2003, Plaintiff learned that Chris Vargas, age twenty-five (25), a younger, less qualified applicant, who worked with Plaintiff from 2002 to 2003 and repeatedly asked Plaintiff how to do the work, was awarded the Mobile Equipment Servicer (WG-5806-06) position instead of Plaintiff. (Decla Pl)

8. From April 8 to 19, 2003 Plaintiff made the following notifications of his age discrimination complaint, which were all well within the forty-five (45) day time frame for filing an Equal Employment Opportunity complaint:

    a. Tonya Stels of the Hickam Air Force Base Hiring Office who told Plaintiff that he scored 90 out of 100 and that he was supposed to have a Veteran's Preference, she gave Plaintiff the following numbers to call and complain to: (210) 565-3069 x4035 (recording said incorrect number) and 1 (800) 699-4473 (recorded message). Called her back several times to verify the numbers, no call back. Tonya Stels did not refer Plaintiff to the EEO office. (Decla Pl)

    b. Federal Job Information 541-2791 (recording). (Decla Pl)

    c. Veterans Affairs office who refers Plaintiff to Personnel at his job site. The VA did not refer Plaintiff to the EEO office. (Decla Pl)

    d. Hickam Air Force Civilian Personnel Employment Office "Greg" (last name unknown) who told Plaintiff "Beverly" (last name unknown) would call him back. She didn't. "Greg" did not refer Plaintiff to the EEO office. (Decla Pl)

    e. Plaintiff made several calls back to the Hickam Air Force Civilian Personnel Employment Office for "Beverly" who informed Plaintiff she would "check on it." Plaintiff did not hear back from "Beverly" and

she did not refer Plaintiff to the EEO office. (Decla Pl)
Plaintiff called the Hickam Air Force Civilian Personnel
Employment Office several times for "Beverly" with no
luck. (Decla Pl)

f.   Plaintiff calls "Greg" of the Hickam Air Force Civilian
     Personnel Employment Office again, who now advises
     Plaintiff to call the "hiring body" - Plaintiff's former
     supervisor Randy Nunes to complain about age
     discrimination. Once again "Greg" does not inform
     Plaintiff that he should contact EEO. (Decla Pl)

g.   Plaintiff telephones Supervisor Randy Nunes and
     reports that a younger, less qualified person who
     constantly asked Plaintiff questions about how to
     perform his job in tire maintenance when they worked
     together in 2002-03 was wrongly selected over Plaintiff
     who had 27 years of preventative tire maintenance
     experience while the younger selectee was only alive 25
     years. Supervisor Nunes stated that he picked the
     best applicant. Plaintiff told Nunes that he wanted
     information to follow-up on this matter and Nunes
     replied "go ahead" without referring Plaintiff to the EEO
     office. (Decla Pl)

h.   Work Links Veteran's Outreach Program Melody
     Hudson 675-0012 who referred Plaintiff to a Labor
     and Hiring Office - Gill Hough. Ms. Hudson did
     not refer Plaintiff to the EEO office. (Decla Pl)

     i.     Labor and Hiring Office Gill Hough, who advised Plaintiff to write to his Senator and Congressmen. Mr. Hough did not refer Plaintiff to the EEO office. (Decla Pl)

     j.     Plaintiff writes to U.S. Senator Daniel Inouye. (Ex E)

     k.     Plaintiff writes to U.S. Senator Daniel Akaka. (Ex F)

     l.     Plaintiff writes to U.S. Congressman Neil Abercrombie. (Ex G)

     m.     Plaintiff writes to U.S. Congressman Ed Case. (Ex H)

9.     Plaintiff's letters to Senators Inouye and Akaka, and Congressmen Abercrombie and Case, triggered a response from Colonel Raymond G. Torres, Commander, 15th Airlift Wing, 800 Scott Circle, Hickam Air Force Base, Hawaii, dated June 12, 2003. (Ex I)

10.     A copy of Colonel Torres letter was sent to Plaintiff and that was the first notification to Plaintiff that an EEO process existed and that "he should contact our Chief, EEO Counselor, Ms. Jana Dove, at 449-6451." (Ex I)

11.     On June 19, 2003 Plaintiff immediately made contact with the EEO as documented on the EEO Counselor's Report at page 1. (Ex J)

12.     In a letter dated August 12, 2003 the EEO acknowledged receipt of Plaintiff's formal EEO complaint of discrimination. (Ex J)

13.     In a document dated August 27, 2003 a Notice of Dismissal of Formal Complaint of Discrimination was issued. (Ex K)

14.     Plaintiff subsequently filed a Request for Reconsideration which was acknowledged in a letter dated May 6, 2004 by the EEOC. (Ex L)

15.    On May 11, 2004 the EEOC issued Plaintiff a denial of Request for Reconsideration and issued Plaintiff a right to file a civil action within ninety (90) calendar days.  (Ex M)

16.    On July 7, 2004 Plaintiff filed a pro se complaint, well within the 90 calendar days to file suit.

17.    On December 27, 2004 Plaintiff's Counsel filed a Notice of Appearance in this case.

## II.    ARGUMENT

### A.    Plaintiff was not notified of the time limits and was not otherwise aware of them

#### 1.    29 CFR 1614.105(a)(2) requires an extension to the 45 day time limit

The Defendant argues that Plaintiff's complaint should be dismissed because he failed to exhaust his administrative remedies when he failed to file his EEOC complaint within the 45-day time limit.  (MTD p4-5) However, the law recognizes circumstances that require an extension to the 45-day time limit, 29 CFR 1614.105(a)(2) states:

> The agency or the Commission shall extend the
> 45-day time limit in paragraph (a)(1) of this section
> when the individual shows that he or she was not
> notified of the time limits and was not otherwise
> aware of them, that he or she did not know and
> reasonably should not have been known that the
> discriminatory matter or personnel action occurred,
> that despite due diligence he or she was prevented
> by circumstances beyond his or her control from
> contacting the counselor within the time limits, or
> for other reasons considered sufficient by the agency
> or the Commission.

29 CFR 1614.105(a)(2).

The Department of the Air Force Pacific Air Forces also recognized this right of Plaintiff's in it's Notice of Dismissal of Formal Complaint of Discrimination. (Ex K)  There are four (4) ways for a Plaintiff to establish a 29 CFR 1614.105(a)(2) exception, by showing: 1) that he was not notified of the time limits and was not otherwise aware of them; 2) that he did not know and reasonably should not have known that the discriminatory matter or personnel action occurred; 3) that despite due diligence he was prevented by circumstances beyond his control from contacting the counselor within the time limits; or 4) for other reasons considered sufficient by the agency. (Ex K; 29 CFR 1614.105(a)(2))  Plaintiff invokes numbers 1) and 3).

First, Plaintiff argues that he was not notified of the time limits and was not otherwise aware of them.  Plaintiff's only employment with the federal government consists of a one year stint from January 2002 to January 2003 as an emergency hire.  Plaintiff asserts that **at no time** did he know of the Equal Employment Opportunity Commission until he saw the letter from Colonel Raymond G. Torres, Commander, 15th Airlift Wing, 800 Scott Circle, Hickam Air Force Base, Hawaii, dated June 12, 2003, sent in response to inquiries from the Senators and Congressmen Plaintiff turned to for guidance.  (Ex I; Decla Pl)

Plaintiff received the letter of non-selection dated April 7, 2003, received by Plaintiff on April 8, 2003, and immediately proceeded on a campaign to find out how to go about making an age discrimination complaint.  It is undisputed that Plaintiff has never filed an Equal Employment Opportunity Commission complaint in his entire life.  (Decla Pl)  Plaintiff immediately: 1) telephoned Tonya Stels of the Hickam Air Force Base Hiring Office; 2) the Federal Job Information line; 3) the Veterans Affairs office; 4) the Hickam Air Force Civilian Personnel

Employment Office "Greg"; 5) the Hickam Air Force Civilian Personnel Employment Office "Beverly"; 6) the "hiring body" - Plaintiff's former supervisor Randy Nunes to advised Plaintiff to "go ahead" and complain, but did not refer Plaintiff to the Equal Employment Opportunity Commission; 7) Work Links Veteran's Outreach Program Melody Hudson; 8) Labor and Hiring - Gill Hough; 9) U.S. Senator Daniel Inouye; 10) U.S. Senator Daniel Akaka; 11) U.S. Congressman Neil Abercrombie; and 12) U.S. Congressman Ed Case.

There is absolutely no evidence to suggest that Plaintiff knew about the Equal Employment Opportunity Commission and instead directed his complaints of age discrimination to all of the above entities to deliberately sabotage his legal rights. There is also absolutely no evidence that any of the above individuals ever referred Plaintiff to the Equal Employment Opportunity Commission. Also note that the above individuals consist of federal employees in the personnel and human resources field who are specially trained to direct callers asking for information to the appropriate entities. Plaintiff's intent to file an immediate Equal Employment Opportunity Commission complaint is evidenced by his immediate contact with the Equal Employment Opportunity Commission upon receipt of Major Torres letter directing Plaintiff there.

Second, Plaintiff next argues that despite due diligence he was prevented by circumstances beyond his control from contacting the counselor within the time limits. It is undisputed that the above facts demonstrate the tight timeline within which Plaintiff took action to file his age discrimination complaint, albeit with the wrong federal entities, starting on the same day he received the non-selection letter - April 8, 2003. Plaintiff cannot be faulted for that with which he did not know. The

Defendant simply alleges with no supporting evidence, "plaintiff was briefed about the EEO process and attended daily staff meetings in the break room where a poster regarding the EEO program was posted." (MTD p5) There is not one single piece of evidence that Plaintiff was ever notified about the Equal Employment Opportunity Commission or what it does.

Plaintiff, a simple man, blue-collar worker, with no formal education, submits his declaration hereto which states: 1) that he never received any information whatsoever about the EEO process; 2) that he did not even hear of the Equal Employment Opportunity Commission until he read about it in Major Torres letter; 3) that he never saw or was directed to any poster on the wall in the large break room; 4) that he would never have wasted so much time telephoning all of the above federal government agencies to ask how to go about filing an age discrimination complaint if he knew the answer; and 5) that the Oahu Sugar Company that he worked at for 27 years did not have such a thing as "EEO" they had a "union" to go to for help. Here, Plaintiff was not a member of the union. (Decla Pl)

Thus, 29 CFR 1614.105(a)(2) mandates that the 45-day time limit "shall" be extended if the above are established. In this case Plaintiff should not be penalized when is was the Defendant who failed to notify Plaintiff time and time again, failing in their duty as personnel and human resource representatives and supervisors to point Plaintiff in the right direction to the EEO. The failure of the Defendant to provide Plaintiff with the information he desperately sought -- should not be considered a failure of Plaintiff's. The notifications he did make from April 8 to 19, 2003 detailed above, immediately after receiving the non-selection letter on the same day, were all well within the 45-day time limitation.

The failure here, is on the shoulders of the Defendant, who failed to notify Plaintiff of his Equal Employment Opportunity Commission rights, not Plaintiff who failed to file an EEO complaint.

### 2. Equitable tolling must be applied in this case

Equitable tolling must be applied in this case. This Court examined equitable tolling in Nimi-Montalbo v. White; 243 F.Supp.2d 1109, 1120 (D. Haw., 2003), "[t]he timely filing of an EEOC charge is not a jurisdictional prerequisite to suit" citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 71 L.Ed. 2d 234, 102 S.Ct. 1127 (1982); "[r]ather, we 'treat the [forty five day] time limit as a statute of limitations, and it is subject to waiver, estoppel, and equitable tolling." Boyd, 752 F.2d 414. "The forty five day period may be extended if, for instance, the employee was not aware of the time limits, or did not know and should not have known of the discriminatory conduct." 243 F.Supp.2d at 393. For all of the reasons articulated in section 1 above, equitable tolling should be applied to the 45 day EEO reporting requirement in this case.

### B. Plaintiff filed his complaint well within the 90 day deadline

Defendant next alleges that Plaintiff received the right to sue letter on May 16, 2004. (MTD p6) That is incorrect. Defendant sent Plaintiff a right to sue letter dated May 11, 2004, see attached Denial of Request for Reconsideration and Complainant's Right to File a Civil Action dated and signed May 11, 2004 by Carlton M. Hadden, Director, Office of Federal Operations, attached hereto at exhibit M. Thus Plaintiff's complaint filed on July 7, 2005 was well within the 90 day filing deadline.

**C.**    **Stipulation to dismiss Randy Nunes was sent to Defendant**

A stipulation to dismiss Randy Nunes as a party was faxed to Defendant on February 25, 2005 for approval.  If acceptable to Defendant the original will be sent for signature.

**D.**    **Plaintiff's proposed amended complaint**

If Defendant's motion to dismiss is denied, Plaintiff will be filing a motion to amend the pro se complaint to include all of the facts as identified in the Facts section above.

**III.    CONCLUSION**

DATED:    Honolulu, Hawaii, February 25, 2005.


VENETIA K. CARPENTER-ASUI
Attorney for Plaintiff
PETER SEBALA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PETER G. SEBALA, | ) | CIV. NO. 04-00404 SPK LEK |
| | ) | |
| Plaintiff, | ) | DECLARATION OF |
| | ) | PETER G. SEBALA |
| vs. | ) | |
| | ) | |
| RANDELL NUNES; JAMES G. | ) | |
| ROCHE, DR., SECRETARY, | ) | |
| DEPARTMENT OF THE AIR | ) | |
| FORCE, | ) | |
| | ) | |
| Defendants. | ) | |
| ————————————— | ) | |

## DECLARATION OF PETER G. SEBALA

I, PETER G. SEBALA, state that:

1. My birthday is August 27, 1949, and is 55 years of age.

2. I am a Vietnam Veteran.

3. I worked for twenty-seven (27) years for Oahu Sugar Co. in the Preventive Maintenance Tire Shop from 1967 to 1994.

4. I was hired for a temporary NTE 1 year emergency hire appointment to a Mobile Equipment Servicer position (WG-5806-06) for the period of January 2002 through January 2003. I was told that the position would terminated and then re-opened as a permanent position.

5. Between February 2003 and April 7, 2003, I applied for the same position advertised as a permanent position, Mobile Equipment Servicer (WG-5806-06).

6.    In a letter dated April 7, 2003, which I received on April 8, 2003, I was notified that someone else was hired for the Mobile Equipment Servicer (WG-5806-06) position.

7.    On April 8, 2003, I learned that Chris Vargas, age twenty-five (25), a younger, less qualified applicant, who worked with me from 2002 to 2003 and repeatedly asked me how to do the work, was awarded the Mobile Equipment Servicer (WG-5806-06) position instead of me.

8.    From April 8 to 19, 2003 I made the following notifications of my age discrimination complaint, which were all well within the forty-five (45) day time frame for filing an Equal Employment Opportunity complaint:

   a.    Tonya Stels of the Hickam Air Force Base Hiring Office who told me that I scored 90 out of 100 and that I was supposed to have a Veteran's Preference, she gave me the following numbers to call and complain to: (210) 565-3069 x4035 (recording said incorrect number) and 1 (800) 699-4473 (recorded message).  Called her back several times to verify the numbers, no call back.  Tonya Stels did not refer me to the EEO office.

   b.    Federal Job Information 541-2791 (recording).

   c.    Veterans Affairs office which referred me to Personnel at my job site.  The VA did not refer me to the EEO office.

   d.    Hickam Air Force Civilian Personnel Employment Office "Greg" (last name unknown) who told me "Beverly" (last name unknown) would call me back.  She didn't.  "Greg" did not refer me to the

2

EEO office.

e.    I made several calls back to the Hickam Air Force Civilian Personnel Employment Office for "Beverly" who informed me she would "check on it." I did not hear back from "Beverly" and she did not refer me to the EEO office. I called the Hickam Air Force Civilian Personnel Employment Office several times for "Beverly" with no luck.

f.    I called "Greg" of the Hickam Air Force Civilian Personnel Employment Office again, who now advises me to call the "hiring body" - My former supervisor Randy Nunes to complain about age discrimination. Once again "Greg" does not inform me that I should contact EEO.

g.    I telephoned Supervisor Randy Nunes and informed him that the younger, less qualified person he hired constantly asked me questions about how to perform his job in tire maintenance when we worked together in 2002-03, and was wrongly selected over me. I have 27 years of preventative tire maintenance experience while the younger selectee was only alive 25 years. Supervisor Nunes stated that he picked the best applicant. I told Nunes that I wanted information to follow-up on this matter with a complaint and Nunes replied "go ahead" without referring me to the EEO office.

h.     Work Links Veteran's Outreach Program Melody Hudson 675-0012 who referred me to the Labor and Hiring Office - Gill Hough. Ms. Hudson did not refer me to the EEO office.

i.     Labor and Hiring Office Gill Hough, who advised me to write to my Senator and Congressmen. Mr. Hough did not refer me to the EEO office.

j.     I wrote to U.S. Senator Daniel Inouye.

k.     I wrote to U.S. Senator Daniel Akaka.

l.     I wrote to U.S. Congressman Neil Abercrombie.

m.     I wrote to U.S. Congressman Ed Case.

9.     My letters to Senators Inouye and Akaka, and Congressmen Abercrombie and Case, triggered a response from Colonel Raymond G. Torres, Commander, 15th Airlift Wing, 800 Scott Circle, Hickam Air Force Base, Hawaii, dated June 12, 2003.

10.     A copy of Colonel Torres letter was sent to me and that was the first notification to me that an EEO process existed and that "[I] should contact our Chief, EEO Counselor, Ms. Jana Dove, at 449-6451."

11.     On June 19, 2003 I immediately made contact with the EEO as documented on the EEO Counselor's Report at page 1.

12.     In a letter dated August 12, 2003 the EEO acknowledged receipt of my formal EEO complaint of discrimination.

13.     In a document dated August 27, 2003 a Notice of Dismissal of Formal Complaint of Discrimination was issued.

14.     I subsequently filed a Request for Reconsideration which was acknowledged in a letter dated May 6, 2004 by the EEOC.

15.    On May 11, 2004 the EEOC issued me a denial of Request for Reconsideration and issued me a right to file a civil action within ninety (90) calendar days.

16.    On July 7, 2004 I filed a pro se complaint, well within the 90 calendar days to file suit.

17.    On December 27, 2004 Plaintiff's Counsel filed a Notice of Appearance in this case.

18.    Exhibit A attached hereto is a true and correct copy of Notification of Personnel Action form regarding my hire as a Mobile Equipment Servicer on 1/28/02.

19.    Exhibit B attached hereto is a true and correct copy of Notification of Personnel Action form regarding my work performance being at an acceptable level of competence and pay raise dated effective 10/1/02.

20.    Exhibit C attached hereto is a true and correct copy of Notification of Personnel Action dated effective 10/1/02.

21.    Exhibit D attached hereto is a true and correct copy of a letter addressed to me from Randy Nunes, Selection Official dated April 7, 2003.

22.    Exhibit E attached hereto is a true and correct copy of my letter to Congressman Daniel Inouye dated April 28, 2003 with a copy of the Certified Mail card.

23.    Exhibit F attached hereto is a true and correct copy of my letter to Congressman Daniel Akaka dated April 28, 2003 with a copy of Certified Mail card.

24.    Exhibit G attached hereto is a true and correct copy of my letter to Congressman Neil Abercrombie dated April 28, 2003 with a copy of the Certified Mail card.

25.    Exhibit H attached hereto is a true and correct copy of my letter to Congressman Ed Case dated April 28, 2003 with a copy of the Certified Mail card.

26.    Exhibit I attached hereto is a true and correct copy of the letter to Congressman Daniel K. Akaka from Colonel Raymond G. Torres dated June 12, 2003.

27.    Exhibit J attached hereto is a true and correct copy of a memorandum to me from Jana M. Dove, EEO Manager and her report dated August 12, 2003.

28.    Exhibit K attached hereto is a true and correct copy of a Notice of Dismissal of Formal Complaint of Discrimination dated August 27, 2003.

29.    Exhibit L attached hereto is a true and correct copy of a letter to me from Robert J. Barnhart of the EEOC dated May 6, 2004.

30.    Exhibit M attached hereto is a true and correct copy of the Denial of Request for Reconsideration and Right to Sue from the EEOC dated May 11, 2004.

31.    At no time did I know of the Equal Employment Opportunity Commission until I saw the letter from Colonel Raymond G. Torres dated 6/12/03.

32.    I received the letter of non-selection dated April 7, 2003, on April 8, 2003, and immediately began calling to find out how to go about making an age discrimination complaint.

33.    I never filed an EEO complaint in my life until this case.

34.    I am a simple man, a blue collar worker, with no formal education.

35.    I never received any information whatsoever about the EEO process.

36.    I never saw or was directed to any poster on the wall in the large break room regarding EEO.

37.    I would never have wasted so much time calling all of those federal government agencies to ask how to go about filing an age discrimination complaint if I knew about the EEO, I would have just called EEO.

38.    Oahu Sugar Company did not have "EEO" we had a "union" to protect us, but I did not join the Federal union.

I, Peter G. Sebala, do declare under penalty of law that the foregoing is true and correct.

DATED:    Honolulu, Hawaii, _____, 2005.

_SIGNATURE    FORTH COMING_
PETER G. SEBALA

standard Form 50-B
ev. 7/91
I.S. Office of Personnel Management
PM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| . Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| SEGALA PETER G | 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 | 08-27-49 | 01-28-02 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| -A. Code **171** | 5-B. Nature of Action  EXC APPT NTE       01-27-03 | 6-A. Code | 6-B. Nature of Action |
| -C. Code **W9R** | 5-D. Legal Authority  SCH A, 213.3102(I)(3) | 6-C. Code | 6-D. Legal Authority |
| -E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| . FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | MOBILE EQUIPMENT SERVICER                CO342 |

| . Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | WG | 5306 | 06 | 01 | $16.68 | PH |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $16.68 | $  0 | $16.68 | $  0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| 15 LRD-LGR-YMG | 15 LOGISTICS SUPPORT DIV   LRD-LGR YMG |
| | PAC          COMMAND: OR |
| | GENERAL PURPOSE    ORG-STR: LSDVMG |
| | HICKAM         AFB HI 96853-5000 |
| | AUTH PAS: HLORFSXY |
| | OFFICE SYMBOL: 15LSDVMG |

### EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|
| 1 - None  2 - 5-Point | 3 - 10-Point/Disability  4 - 10-Point/Compensable | 5 - 10-Point/Other  6 - 10-Point/Compensable/30% | **0** | 0 - None   2 - Conditional  1 - Permanent  3 - Indefinite | | X YES    NO |

| 27. FEGLI  INELIGIBLE  A0 | 28. Annuitant Indicator  9  NOT APPLICABLE | 29. Pay Rate Determinant  0 |
|---|---|---|

| 30. Retirement Plan  C  FICA | 31. Service Comp. Date (Leave)  06-24-00 | 32. Work Schedule  F  FULL TIME | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 2  1 - Competitive Service  3 - SES General  2 - Excepted Service  4 - SES Career Reserved | N  E - Exempt  N - Nonexempt | 124000 27596A | 0931 |

| 38. Duty Station Code  15-1685-003 | 39. Duty Station (City - County - State or Overseas Location)   HONOLULU  HICKAM AFB                                      HAW |
|---|---|

| 40. AGENCY DATA | 41. | 42. | 43. | 44.  DCPS, DENVER CO |
|---|---|---|---|---|

45. Remarks

APPOINTMENT AFFIDAVIT EXECUTED 01-28-02.
CREDITABLE MILITARY SERVICE: 01 YEARS 07 MONTHS.
PREVIOUS RETIREMENT COVERAGE: NEVER COVERED
REASON FOR TEMPORARY APPOINTMENT: TO PROVIDE EMERGENCY STAFFING TO MEET IMMEDIATE MISSION
NEEDS.
INELIGIBLE FOR HEALTH BENEFITS UNTIL YOU COMPLETE 1 YEAR OF CURRENT CONTINUOUS
EMPLOYMENT.  THEN YOU MAY ELECT HEALTH BENEFITS FOR WHICH YOU WILL BE CHARGED
THE FULL PREMIUM.

## EXHIBIT  A

000023

| 46. Employing Department or Agency  DEPT OF THE AIR FORCE | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| 47. Agency Code  AF0R | 48. Personnel Office ID  2257 | 49. Approval Date  01-28-02 | Y KUNIYOSHI  CHIEF, AFFIRMATIVE EMPL SEC |

Editions Prior to 7/91 Are Not Useable After 6/30/93

EMPLOYEE COPY

## AIR FORCE CORE PERSONNEL DOCUMENT

15  *LRD—LGR—VMG*

ORGANIZATION:     ~~15LSDFAG~~
SUPV LEVEL CODE:   8
TARGET GRADE:      06
JOB SHARE:         n/a
SENSITIVITY:       Noncritical-Sensitive
EMERGENCY ESS:     N
KEY POSITION:      Y

CPD NUMBER:        8C03420
COMP LEVEL CODE:   24PA
FLSA:              Non-Exempt
CAREER PROG ID:
BUS:               0931
DRUG TEST:         N
POSITION HIST:     New

CLASSIFICATION: Mobile Equipment Servicer, WG-5806-06
DUTY TITLE:

ORG & FUNC CODE:    TAY--Transportation
1ST SKILL CODE:     65%    LEXLJE      MOBILE EQUIPMENT SERVICING/AUTO TIRE MOUNTING
2ND SKILL CODE:     35%    LEX         MOBILE EQUIPMENT SERVICING
3RD SKILL CODE:

CLASSIFICATION CERTIFICATION:

_____                    2-28-00
CLASSIFIER'S SIGNATURE                           _____
                                                 DATE

SUPERVISOR'S CERTIFICATION:  I certify that this Core Personnel Document is an accurate statement of the major duties, knowledges, skills, and abilities, responsibilities, physical and performance requirements of this position and its organizational relationships.  The position is necessary to carry out government functions for which I am responsible.  This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

_____                    27 Feb 00
SUPERVISOR'S SIGNATURE                           _____
                                                 DATE

PERFORMANCE PLAN CERTIFICATION:

| Rater/Supv. | | | | |
|---|---|---|---|---|
| Date | 1 16 01 | | | |
| Reviewer | | | | |
| Date | | | | |
| Employee* | | | | |
| Date | | | | |

*Signature acknowledges receipt.  It does not indicate agreement/disagreement.

CORE PERSONNEL DOCUMENT                                              Number: 8C03420

## PURPOSE OF POSITION AND ORGANIZATIONAL LOCATION:

The primary purpose of this position is: To remove, repair or replace, and install pneumatic and solid rubber tires on automotive vehicles and various types of heavy mobile equipment.

The organizational location of this position is: 15 Air Base Wing, 15th Logistics Group, 15th Logistics Support Division, Fleet Management Branch/Vehicle Maintenance Section, Hickam AFB HI

---

**ORGANIZATIONAL GOALS OR OBJECTIVES:** Provide efficient, daily vehicle maintenance support to the 15th Air Base Wing and associate units located on Hickam Air Force Base.

---

DUTY 1:                                             50%              Critical

---

Removes, inspects, repairs/ replaces, and installs tires on vehicles.  Removes and replaces tire(s) and wheel assemblies from vehicle using air/ hydraulic jacks, safety stands and pneumatic tools.  Uses tire mounter/demounter machines, crowbars and hammers to demount tires from single piece and multi-piece rim wheel assemblies. Inspects tires for tread cracks, base separation and slippage on rim. Inspects tubes for leaks using air and immersing tube in water tank. Makes necessary repairs on tube and tubeless tires utilizing rubber plug inserts or sealing patch. Inspects rims for cracks, broken welds, bent rings and excessive corrosion. Reassembles tire, tube and rim, aligns valve stem, mounts tire onto rim, and inflates tire to proper pressure. Ensures restraining equipment e.g. tire cage, chains etc. are used accordingly before inflating multi-piece rim tire assembly. Inflates tire to recommended pressure and balances tire utilizing balancing machine.  Installs tire onto vehicle following proper procedures and using correct tools.

STANDARDS:

A. Consistently utilizes jacks and stands, at the proper rated capacities, to lift and support vehicles during tire changes.

B. Accurately performs visual inspection of tires, rims and related components in accordance with established practices or instructions.

C. Effectively performs tire repair and replacement within workcenter established time frames.

KSA: 1, 2, 3, 4, 5, 6, 7, 8

---

DUTY 2:                                             10%              Critical

---

Complies with tire accountability and tire re-capping program. Ensures tires received from commercial vendors and Base Supply is the correct quantity, ply rating and tread, and documentation received is accurate. Notifies Materiel Control personnel of any discrepancies. Properly tags tire identifying vehicle registration and work order number, and properly stores tires until needed.  Segregates, tags, and palletizes worn tires by size and type for either condemnation or re-treading. Coordinates with vendor tire for re-treading; initiates form 2005 for all Base Supply turn-ins and maintains control of all reparable Due In From Maintenance (DIFM) tires.

STANDARDS:

A. Effectively accounts for and identifies tires received from commercial vendors and Bases Supply.

B. Consistently follows maintenance operating instructions regarding tagging and storage of tires.

C. Accurately receives and reviews DIFM listings and processes all necessary paperwork for turn-in of tires to Base Supply.

KSA: 1, 3, 7

---

000025

CORE PERSONNEL DOC...                                    Number: 8C03420

DUTY 3:                                          10%          Critical

Trains maintenance personnel in Tire Shop operation. When required, uses combination of lesson plans, visual aids, and On the Job Training (OJT) to train fellow workers in the repair and replacement of tires for single and multi-piece rim wheel assemblies. Training includes the proper inspection and operation of tire maintenance tools and equipment, with emphasis placed on safety in the work area. The trainer will inform the trainee(s) of the location of all reference guides and directives applicable to the repair and replacement of vehicle tires. Ensures worker is completely trained in all aspects of tire shop operation before certifying individual.

STANDARDS:

A.    Effectively demonstrates to personnel  proper tire repair and replacement procedures.

B.    Accurately evaluates personnel training before certifying individual.

KSA: 1, 2, 3, 4, 5, 6, 7

---

DUTY 4:                                          10%          Critical

Performs scheduled and unscheduled preventive maintenance on vehicles to restore automotive and heavy mobile equipment to a serviceable condition. Operates mobile maintenance truck to provide roadside assistance and repairs for vehicles located at remote sites. Performs schedule maintenance to include vehicle lubrication, oil and filter changes, and servicing. Troubleshoots and locates worn or malfunctioning components through visual and auditory checks utilizing a variety of test equipment, such as test lights, multi-meters, and other equipment. Accomplishes necessary emergency repairs to vehicles broken down at outlying areas to include tire replacement and jump-starting batteries.

STANDARDS:

A.    Accurately diagnoses defects in major vehicle systems.

B.    Effectively performs  preventive and emergency roadside maintenance.

C.    Demonstrates ability to perform all tasks within workcenter established time frames.

KSA: 1, 2, 3, 4, 5, 6, 7, 8

---

DUTY 5:                                          10%          Critical

Utilizes safety practices and procedures following established safety rules and regulations and maintains safe and clean work environment. Uses and assures proper fit of required  personnel protective equipment and clothing. Utilizes tools and equipment properly.

STANDARDS:

A. Consistently operates equipment in a safe manner, applying established safety rules and regulations to minimize minor violations and to avoid major violations due to employee error or negligence.

B. Promptly informs the supervisor of accidents and/or damage to supplies or equipment or of any observed unsafe practices and/or procedures in a timely manner in accordance with established policies and procedures

C. Practices effective housekeeping to maintain a safe and clean work environment; ensures immediate and outlying areas are kept in inspection order.

KSA: 1, 2, 3, 4, 5, 6, 7, 8

000026

CORE PERSONNEL DOCUMENT                                             Number: 8C03420

DUTY 6:                                              10%          Critical

Uses and maintains hand and power tools and equipment required to accomplish duties of a mobile equipment worker. Ensures that operational inspections on all tire changing equipment is performed on a daily basis. Prepares accurate, complete, and up-to-date records of actions taken and assures documentation is signed and coordinated.

STANDARDS:

A. Consistently performs required daily operational inspections of tools and equipment.

B. Properly uses, maintains, and accounts for all tire shop tools and equipment. Accurately and promptly maintains records and documents actions.

KSA: 1, 5, 6

RECRUITMENT KNOWLEDGES, SKILLS, AND ABILITIES (KSA):

1. Knowledge of safety regulations, procedures, and policies to include environmental directives pertaining to handling hazardous materials.

2. Knowledge of equipment common to the trade, i.e. tire mounter/demounter machine, wheel balancing equipment, and tire cage, portable air compressor, and battery jump starter.

3. Knowledge of technical practices in order to service and maintain single and multi-piece rim wheel assemblies and a wide variety of vehicles and mobile equipment.

4. Skill in the use of measuring instruments and test equipment such as test lamps, timing lights, tachometers, multi-meters, and starting/charging system analyzers.

5. Skill in using basic tools common to the occupation, i.e., pneumatic wrenches, crowbars, hammers, wrenches, screwdrivers, torque wrenches and electric drills.

6. Skill in locating improperly functioning parts for repair or replacement.

7. Ability to read schematics, interprets manufacturers' repair manuals, and technical orders and specifications.

8. Ability to service and maintain combustion-powered automotive vehicles, electric-powered vehicles and equipment, towed vehicles and equipment, over-the-road trucks, and comparable vehicles without more than normal supervision.

CLASSIFICATION CRITERIA

1. Skill and Knowledge

-- Knowledge of techniques for servicing and performing tire repair/replacement and preventive maintenance on a wide variety of vehicles and mobile equipment.

-- Skill in the use of basic tools and equipment both standard and metric (e.g., tire mounter/demounter machine, pneumatic tools, torque wrenches, ratchets, hammers etc.).

-- Basic understanding of on-board computer diagnostic systems and other test equipment. Ability to operate diagnostic equipment, gauges, and meters.

-- Skill in the use of basic test equipment (e.g., test lamps, timing lights, tachometers, multi-meters, analyzers and dial gauges, etc.).

000027

CORE PERSONNEL DOCUMENT

Number: 8C03420

-- Ability to read and comprehend schematics, parts/repair manuals, technical orders, etc.

-- Basic understanding of the makeup and operation of the various individual systems and their interrelationships to analyze test results in order to locate improperly functioning parts for repair or replacement.

## 2. Responsibility

Work is assigned orally or through work orders from supervisor or higher graded worker. On routine assignments, independently selects tools, equipment, and techniques in accordance with standardized procedures and makes adjustments and settings according to manufacturers' specifications. Assignments are carried out with minimal checks during progress. The supervisor or higher graded worker is available for assistance when standardized procedures fail or when the worker is assigned more complex repairs. Completed work is checked to ensure compliance with instructions, specifications, and standard shop practices.

## 3. Physical Effort

Work requires standing, stooping, bending, stretching, crawling under vehicles, and working in tight spaces or tiring and uncomfortable positions. Frequently lifts, handles, and carries parts and equipment weighing up to 50 pounds. Occasionally lifts items 75 pounds or more with mechanical devices or with assistance from other workers.

## 4. Working Conditions

Usually works indoors on concrete surfaces, exposed to drafts, noise, and auto fumes. Continually exposed to dirt, dust, grease, and to the potential for burns, chemical irritations, shocks, bruises, cuts, and strains. Occasionally works outside under adverse weather conditions. Required to follow prescribed safety procedures and is required to use safety equipment such as safety shoes, glasses, and hearing protection.

Other significant facts pertaining to this position are:

1. May assist higher-grade mechanics working on more complex repairs.

2. The work will require the employee to drive a motor vehicle. An appropriate, valid driver's license is required for the position.

3. This is a "Key" position. Incumbents may be required to take part in readiness exercises and contingencies. Incumbents must be removed from their military recall status if alternatives for filling the position during an emergency are not available.

CLASSIFICATION SUMMARY:

CLASSIFICATION STANDARD(S) USED: OPM Job Grading Standard for Mobile Equipment Servicer, WG-5806, TS-33 dated September 1974.

CLASSIFICATION REMARKS:

AFPC Free Flow Format

000028