**ORIGINAL**

VENETIA K. CARPENTER-ASUI
A Law Corporation

VENETIA K. CARPENTER-ASUI    6901
Haseko Center
820 Mililani Street, Suite 812
Honolulu, Hawaii 96813
Telephone:  (808) 523-6446
Facsimile:   (808) 523-6727

Attorney for Plaintiff
PETER G. SEBALA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 2 4 2006

at _____ o'clock and _____ min. ___M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PETER G. SEBALA, ) | CIVIL NO. 04-00404 SPK-LEK |
| ) | |
| Plaintiff, ) | PLAINTIFF'S TRIAL BRIEF; |
| ) | CERTIFICATE OF SERVICE |
| vs. ) | |
| ) | |
| DR. JAMES G. ROCHE, ) | |
| SECRETARY, DEPART- ) | |
| MENT OF THE AIR FORCE, ) | |
| ) | |
| Defendant. ) | Trial: 2/7/06 |
| _____) | |

## PLAINTIFF'S TRIAL BRIEF

PETER G. SEBALA (hereinafter "Plaintiff"), by and through his
attorney, hereby files Plaintiff's Trial Brief pursuant to the Rule 16 Order.

I.    **FACTS**

On 8/27/49 Plaintiff was born.

From 1970 to 1971, with one year and seven months of creditable service, Plaintiff served in the U.S. Army in the Vietnam War and received an honorable discharge.  Plaintiff was awarded the:

1.    National Defense Service Medal,

2.    Vietnam Service Medal with a Bronze Service Star,

3.    Republic of Vietnam Campaign Medal, and

4.    Sharpshooter (Rifle).

From 1967 to 1994 Plaintiff was employed by Oahu Sugar Company for 27 years working in tire maintenance and preventative maintenance. Plaintiff also held the position of Tire Shop Leader with duties including repair and maintenance of tires on all vehicles and equipment in the shop and field; performing scheduled maintenance on all vehicles and equipment including oil and filter changes; inspecting and lubricating chassis components; and conducting training of new employees.

On 1/23/02 Plaintiff received a full-time "temporary" one year appointment as a Mobile Equipment Servicer WG-5806 working at the Hickam Air Force Base in Honolulu, Hawaii.

On 8/11/02 Plaintiff's SF-50 rated Plaintiff's performance as a temporary Mobile Equipment Servicer WG-5806 as "[w]ork performance at an acceptable level of competence."

On 10/3/02 Plaintiff received a mid-year Civilian Progress Review Worksheet which rated his work successfully, with a written comment by his immediate supervisor Randall Nunes which stated, "Good Job!"

From 3/14/03 to 3/20/03 Plaintiff's Mobile Equipment Servicer

2

WG-5806 position, as a "permanent" status, was posted as a Vacancy Announcement.

Plaintiff applied for the "permanent" Mobile Equipment Servicer WG-5806 position and submitted his resume, which included the work he performed in the "temporary" position right before the Vacancy Announcement was posted.

In a letter dated April 7, 2003 Plaintiff was notified that Christopher Vargas, age 25, was hired for the permanent Mobile Equipment Servicer position instead of Plaintiff, age 53.

Upon receiving Supervisor Randall Nunes letter dated April 7, 2003, Plaintiff telephoned Supervisor Nunes who told Plaintiff that he "hired the most qualified person for the job."

On May 4, 2003 Christopher Vargas, age 25, began working in the permanent Mobile Equipment Servicer WG-5806 position.

In April-May 2003, Plaintiff's co-worker Michael Oyadomori informed Plaintiff that he asked Supervisor Randall Nunes why he hired Christopher Vargas who was inexperienced for the Mobile Equipment Servicer WG-5806 position. Supervisor Randall Nunes replied "[w]ell the guy younger and he's married, got family."

In April 2003 Plaintiff reported the age discrimination to:

1.     Tonya Stels - Hickam Air Force Base Hiring Office,

2.     Federal Job Information 541-2791 (recording),

3.     Department of Veterans Affairs,

4.     Hickam Air Force Base Civilian Personnel Employment Office "Greg",

5.     Hickam Air Force Base Civilian Personnel Employment Office "Beverly",

3

6.     Supervisor Randall Nunes,

7.     Work Links Veterans Outreach Program, Melody Hudson,

8.     Labor & Hiring Office, Gill Hough,

9.     Senator Daniel Akaka,

10.    Senator Daniel Inouye,

11.    Congressman Ed Case,

12.    Congressman Neil Abercrombie.

## II.    DISPUTED ISSUE - AGE DISCRIMINATION

### A.    FEDERAL EMPLOYEES ARE PROTECTED BY ADEA

This case concerns a claim of age discrimination in violation of s15, the Federal employees' component of the Age Discrimination in Employment Act (hereinafter "ADEA") of 1967, 81 Stat. 602, as added by the Fair Labor Standards Amendments of 1974, 88 Stat. 74, and amended, 29 U.S.C. s633a. *Stevens v. Dept of Treasury,* 500 US 1, 111 S.Ct. 1562, 1565 (1991).

### B.    PRIMA FACIE CASE - ADEA

Under the ADEA, it is "unlawful for an employer... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Reeves v. Sanderson Plumbing,* 530 US 133, 141, 120 S.Ct. 2097, 2105 (2000). "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Id; Hazen Paper Co. v. Biggins,* 507 US 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). "That is, the plaintiff's age must have

4

'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Ibid.*

"*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases." *St Mary's Honor Center v. Hicks,* 509 US 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "First, the plaintiff must establish a prima facie case of discrimination." *Ibid; Texas Dept of Community Affairs v. Burdine,* 450 U.S. 248, 252-253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff must establish that: 1) at the time he was not hired, he was a member of the class protected by the ADEA (at least 40 years old) 29 U.S.C. s631(a) [Plaintiff Peter Sebala was 53 at the time he was not hired]; 2) he was otherwise qualified for the position of Mobile Equipment Servicer [Plaintiff had 25 years of experience]; and 3) he was not hired by Defendant [Defendant hired Chris Vargas a 25 year old instead].

### 1. **Plaintiff proves 1st element of prima facie case**

The first element of Plaintiff's prima facie case is that at the time he was not hired, he was a member of the class protected by the ADEA (at least 40 years old) 29 U.S.C. s631(a). It is undisputed that Plaintiff's birthdate is 8/27/49 and that he was 53 years of age on 5/4/03 when Christopher Vargas age 25 was hired for the permanent Mobile Equipment Servicer WG-5806 job instead of Plaintiff. This element is not in dispute.

### 2. **Plaintiff proves 2nd element of prima facie case**

The second element of Plaintiff's prima facie case is that he was qualified for the position of Mobile Equipment Servicer on the date he was not hired 5/4/03. It is undisputed that: 1) Plaintiff had 25 years of experience working at Oahu Sugar Company from approximately 1964 to

1994, which included 26 years of working with tires and heavy vehicles,
including holding the position of Tire Shop Leader; 2) Plaintiff was hired by
Defendant for the temporary Mobile Equipment Servicer WG-5806 job from
1/23/02 to 1/22/03 and therefore was deemed qualified by Defendant; and 3)
during the one year that Plaintiff held the temporary Mobile Equipment
Servicer WG-5806 position he received acceptable job performance ratings
while employed by Defendant from his Supervisor Randall Nunes who
wrote on Plaintiff's evaluation "Good Job!"

3.     **Plaintiff proves 3rd element of prima facie case**

The third element of Plaintiff's prima facie case is that he was not
hired by Defendant on 5/4/03 for the permanent Mobile Equipment Servicer
WG-5806 job.  Instead, Supervisor Randall Nunes hired Chris Vargas, age
twenty-five (25), a younger, less experienced person. (Def concise stmt ex
6; Decla Pl)

B.     **BURDEN OF PRODUCTION SHIFTS TO DEFENDANT**

The burden of production then shifts to Defendant to "produc[e]
evidence that the plaintiff was rejected, or someone else was preferred, for a
legitimate, nondiscriminatory reason." *Burdine supra* at 254, 101 S.Ct.
1089. "This burden is one of production, not persuasion; it 'can involve no
credibility assessment.'" *St. Mary's Honor supra* at 509, 113 S.Ct. 2742.
"The trier of fact may consider the evidence establishing the plaintiff's
prima facie case 'and inferences properly drawn therefrom... on the issue of
whether the defendant's explanation is pretextual.'" *Burdine supra* at 255,
n. 10, 101 S.Ct. 1089.

"[I]t is permissible for the trier of fact to infer the ultimate fact of
discrimination from the falsity of the employer's explanation." 530 US AT
147. "[T]he trier of fact can reasonably infer from the falsity of the

6

explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" *Wright v. West,* 505 US 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992).

Once Plaintiff has establishes his prima facie case above, the burden of production shifts to Defendant to articulate a non-discriminatory reason for its adverse employment decision. Here, Defendant alleges that Plaintiff was not hired due to his:

1. "prior work experience"

2. "instances of insubordination" and

3. "low performance feedback."

(Def's msj p9-10) Notably, Defendant does not explain what it means by its three proffered reasons, it simply directs the reader to its exhibits #3, and #7.

Defendant's *first* piece of evidence, its exhibit #3, is Plaintiff's Civilian Progress Review Worksheet dated 10/3/02 wherein Supervisor Nunes rated Plaintiff's work performance at acceptable levels and even wrote the words "Good Job!" Obviously, this evidence proves that Plaintiff was doing well in the performance of his job.

Defendant's *second* piece of evidence, its exhibit #7, is a self-serving affidavit from the individual in this lawsuit that is accused of committing the age discrimination at issue here - Supervisor Nunes. The affidavit which is dated September 27, 2005, was written in support of Defendant's motion for summary judgment in an attempt to vindicate himself by making false accusations against Plaintiff which were never documented anywhere in Plaintiff's entire employment record.

7

Supervisor Nunes also wrote that he did not know the ages of the applicants. This is another false statement. The age difference between Christopher Vargas (age 25) and Plaintiff (53) is obvious. Supervisor Nunes worked with both men for one year before he hired the younger less qualified of the two for the permanent Mobile Equipment Services WG-5806 position. Plaintiff is more than twice the age of Christopher Vargas and Supervisor Nunes attempt to claim ignorance of the age difference is not credible.

Thus, Defendant's only proffered evidence that it did not commit age discrimination is a "favorable" mid-term job evaluation and a self-serving affidavit from the employee who is accused of committing the age discrimination, who makes unspecified allegations against Plaintiff without one single document to support the generalizations contained in his affidavit. That is not evidence. In fact, the only thing it does prove is that there was absolutely nothing in the record to support Defendant's rejection of Plaintiff for the position, other than his age.

## C.   DEFENDANT'S EXPLANATION WAS PRETEXT FOR UNLAWFUL AGE DISCRIMINATION

Clearly, as established above, Defendant's proffered explanation for not hiring Plaintiff is pretext for unlawful discrimination. The following are reasons why Defendant's explanation is unsupported by the evidence:

*First*, When Plaintiff telephoned Supervisor Nunes upon receiving his letter informing Plaintiff that he was not hired, Supervisor Nunes replied, "I hired the most qualified person for the job." This is clearly pretext for age discrimination as Plaintiff had 27 years of experience working for Oahu Sugar Company from 1967 to 1994 working in tire maintenance and preventative maintenance. Plaintiff also held the position

8

as Tire Shop Leader with duties including repair and maintenance of tires on all vehicles and equipment in the shop and field; performing scheduled maintenance on all vehicles and equipment including oil and filter changes; inspecting and lubricating chassis components; and conducting training of new employees. Additionally, Defendant hired Plaintiff for the temporary Mobile Equipment Servicer WG-5806 position for the previous year as a temporary hire, thus giving him 28 years of experience. Supervisor Nunes instead hired Chris Vargas, age 25. Plaintiff had more years of work experience in this field, than Chris Vargas had been alive.

**Second**, as further evidence of pretext, Defendant produced no evidence that Plaintiff was not performing his job as a one-year appointment Mobile Equipment Servicer WG-5806 properly. In fact, the documentary evidence submitted by Defendant proves that Plaintiff was performing well. On 8/11/02 Plaintiff's SF-50 rated Plaintiff's performance as a temporary Mobile Equipment Servicer WG-5806 as "[w]ork performance at an acceptable level of competence." Again, on 10/3/02 Plaintiff received a mid-year Civilian Progress Review Worksheet which rated his work successfully, with a written comment by his immediate supervisor Randall Nunes which stated, "Good Job!"

**Third,** as further evidence of pretext, Christopher Vargas (age 25) was not qualified for the position of Mobile Equipment Servicer WG-5806. Co-workers Ace Suares and Michael Oyadomori were assigned to train Christopher Vargas after he was hired for the permanent Mobile Equipment Servicer WG-5806 job:

Oyadomori:        Chris has hard time working on that, you know, to
                  learn. He has hard time working on the tires...

9

| | |
|---|---|
| Counsel: | So did he [A. Suares] say what he [C. Vargas] had a hard time learning about the tires? |
| Oyadomori: | Split rims... |
| Counsel: | And what was he having trouble doing, taking it apart or putting it together? |
| Oyadomori: | Taking them apart and putting them together... |
| Counsel: | Did Ace seem frustrated about how the training was going? |
| Oyadomori: | Sometime, yeah, Ace come up and tell me that this guy no listen, no like train 'em... |
| Oyadomori: | ...You could see the guy got frustrated, you know, working on tires.  I guess after a while once you learn, you know, took 'em quite a while. |
| Counsel: | How long did it take him? |
| Oyadomori: | Maybe about a month. |
| Counsel: | Is that a long time? |
| Oyadomori: | Yeah. |
| Oyadomori: | No.  He [C. Vargas] looked inexperienced. |
| Counsel: | And can you describe how he looked inexperienced? What does that mean? |
| Oyadomori: | Just observing him, you can tell when somebody is experienced or inexperienced.  Because I operate the machine and I worked the tire shop before, you know. |
| Counsel: | For five years? |
| Oyadomori: | So right off the bat you can watch somebody and you know that guy is inexperienced... |
| Counsel: | So he had a couple of months work under his belt in |

|                 | the tire shop? |
|                 | ...And did it seem like he was learning the job or he still was inexperienced? |
| Oyadomori:      | He didn't know how to do it, mount the tires. |
| Counsel:        | Did you ever hear anybody else say that Mr. Vargas was inexperienced working in the tire shop? |
| Oyadomori:      | Everybody knew that, that he was -- you know, he wasn't experienced. |

**_Fourth,_** as further evidence of pretext, Christopher Vargas displayed angry outbursts in the workplace, especially out of frustration at not knowing how to perform the Mobile Equipment Servicer WG-5806 duties:

| Oyadomori:      | ... He get angry. Mr. Vargas get angry... |
| Counsel:        | Mr. Vargas got angry-- |
| Oyadomori:      | That's what Ace said.  I could see it, too from across the way... |
| Counsel:        | What could you see that made you think that Mr. Vargas was frustrated? |
| Oyadomori:      | By his [C. Vargas] face and he's [Ace Suares] coming up to me and telling me Mr. Vargas get angry... |
| Counsel:        | So his face looked what, frustrated? |
| Oyadomori:      | Looked angry.  Angry. |
| Oyadomori:      | ...he get angry at the machine and he get mad at Ace, angry at Ace... |
| Oyadomori:      | ...Ace told me that Mr. Vargas was pissed off at me, started swearing and all that, saying that, you know, [inaudible] he sweared about me to Mr. Soares, cussing me out about the tires... |

11

Oyadomori:      Well, when I see him, he looked mad or angry working
                in the tire shop.  Frustrated.  You know when you're
                frustrated you look like you disappointed, or you
                angry, you know.

Oyadomori:      ...the guy get angry, you know, get frustrated.
                Mr. Soares don't want to sign him off.

     Christopher Vargas employment record for workplace violence
incidents are well documented in his personnel file by Supervisor Nunes,
including:

4/30/04      "interview with employee, alleges Mr. Ace Suares-Haoe
             threatened him verbally, after careful review of all statements
             and actions (threatening case, employee and Mr. Soares agree
             to dissolve this case due to misunderstanding between each
             other"

1/12/05      "counseled employee on loosing his temper (ie...swearing,
             challenging my authority about his taking leave)"

4/12/05      "review 860A feedback w/ employee (continues to work on
             temper control & directives)"

5/12/05      "counseled employee about anger management incident w/
             Ace Suares-Haoe 5/12/05"

5/19/05      "issued letter for counseling and brief employee on proper
             conduct"

    *Fifth,* as further evidence of pretext, Supervisor Nunes told Michael
Oyadomori that he hired Christopher Vargas (age 25) instead of Plaintiff
because "the guy younger and he's married, got family."

Thus, based on the above evidence which includes direct evidence of age discrimination statements by Defendant's deciding official in the hiring process, material questions of fact exist as to whether Defendant intended to discriminate against Plaintiff on the basis of his age, and a trial is required.

## III. CONCLUSION

Based on the material questions of fact at issue in this case, a trial is required.

DATED:    Honolulu, Hawaii, January 24, 2006.

VENETIA K. CARPENTER-ASUI
Attorney for Plaintiff
PETER SEBALA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was duly served upon the following person by U.S. Mail prepaid postage or messenger delivery:

R. Michael Burke, Esq.
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850

Attorney for Defendant
JAMES G. ROCHE, DR., SECRETARY,
DEPARTMENT OF THE AIR FORCE

DATED:    Honolulu, Hawaii January 24, 2006.

VENETIA K. CARPENTER-ASUI
Attorney for Plaintiff
PETER SEBALA