EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii

R. MICHAEL BURKE  1902
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, HI 96850
Telephone: 541-2850
Facsimile: 541-3752
E-mail: Mike.Burke@usdoj.gov

Attorneys for Defendant
Secretary, U.S. Air Force

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PETER G. SEBALA,          ) | CIVIL NO. 04-00404 SPK-LEK |
| ) | |
| Plaintiff,      ) | DEFENDANT'S AMENDED PROPOSED |
| ) | FINDINGS OF FACT AND |
| vs.                       ) | CONCLUSIONS OF LAW; |
| ) | CERTIFICATE OF SERVICE |
| JAMES G. ROCHE, DR.,      ) | |
| SECRETARY, DEPARTMENT OF THE ) | |
| AIR FORCE,                ) | |
| ) | TRIAL: February 7, 2006 |
| ) | JUDGE: Samuel P. King |
| Defendants.   ) | |
| ) | |

DEFENDANT'S AMENDED PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW

Comes now James G. Roche, Secretary of the United States Department of the Air Force ("the Air Force"), by and through the United States Attorney for the District of Hawaii, and files this Amended Findings of Fact and Conclusions of Law in accordance with the Rule 16 Scheduling Order.

PROPOSED FINDING OF FACTS

1.  Plaintiff Peter G. Sebala applied and was not selected for a permanent position as a Mobile Equipment Servicer, WG-5806-06, with the 15th LRD/LGR at Hickam AFB, HI on April 7, 2003 which serves as the basis for this case. (See Plaintiff's Exhibit (hereinafter PEX) 12A-D).

2.  Plaintiff Sebala was born on 27 August 1949. (See Defense Exhibit (hereinafter DEX) 200).

3.  Mr. Randall Nunes began working for the Air Force in 1975 and has been employed by the Air Force for over 30 years. Mr. Nunes was also born in 1949, the same year as plaintiff. Mr. Nunes is currently the supervisor for the general purpose and the tire shop. (See Trial Transcript (hereinafter Trans) Trans 1-5). Prior to January 2002, Mr. Randall Nunes, the supervisor, had an opening for a temporary mobile equipment servicer position in his shop.

4.  Mr. Nunes received the applications of Mr. Sebala and another person for the position. Mr. Nunes evaluated the applications and conducted a phone interview with Mr. Sebala. Based on the application and interview, Mr. Nunes chose to hire plaintiff Sebala. (Trans 1-57). Mr. Nunes was Mr. Sebala's direct supervisor while plaintiff was employed as a temporary Mobile Equipment Servicer, WG-5806-06. This position was a temporary one year position. Mr. Sebala worked in this position from January 2002 to January 2003. This position is described in the Core Personnel

Document.  (See PEX 12A-D; DEX 210).

    5.    Between January 2002 and January 2003, Mr. Nunes supervised anywhere from 6 to 12 employees, including plaintiff as a temporary employee.  (Trans 1-5).

    6.    Mr. Randall Nunes observed plaintiff Sebala's work ethic and demeanor on a day-to-day basis for a one-year period of time.  Mr. Nunes noticed instances where Mr. Sebala failed to demonstrate a strong work ethic and had a poor attitude towards authority.  (See PEX 75 at 76-77; DEX 205 and PEX 75 at 87; DEX 201).

    7.    During the period of time Mr. Sebala was a temporary employee, he received one midterm feedback, Air Force Form 860B, documenting his performance in October 2002.  Mr. Nunes evaluated Mr. Sebala's performance and made the notations on this form.  All elements were marked in the middle of an achievement scale. (See PEX 75 at 86; DEX 207).  Mr. Nunes evaluated more than twelve employees throughout his tenure as a supervisor on an Air Force Form 860B.  The rating given to Mr. Sebala was the lowest rating Mr. Nunes has ever given to an employee under his supervision. (Trans 1-59).  Mr. Nunes wrote "Good job!" on this form merely to encourage Mr. Sebala to do his best in future.  (Trans 1-60).

    8.    Plaintiff did have a trainer assigned to him when he began the temporary Mobile Equipment Servicer position.  In accordance with office policy, all new employees are

given trainers. (See DEX 236, 237, and 238; Trans 1-34; 1-64).

9. During the year Mr. Sebala was a temporary employee, there were at least two instances of insubordinate behavior, as perceived by management, towards authority. (See PEX 75 at 76-77; DEX 205 and PEX 75 at 87; DEX 201: DEX 204 and PEX 75 at 78). Although plaintiff Sebala claimed that Mr. Nunes never spoke to him about his attitude or work, this claim is contradicted by plaintiff's notes that were admitted as a plaintiff's exhibit. (Trans 1-171). Mr. Sebala's notes stated, Mr. Nunes "said I did not complete a task in a timely manner," thus diminishing his credibility. (PEX 53A-D and 60A-B). Further, plaintiff knew Mr. Nunes was unhappy with him after Mr. Sebala called in sick and raised his voice to Mr. Nunes. Based on the evidence, I do not find plaintiff's claim that no communication occurred regarding his attitude to be credible.

10. On 28 August 2002, Mr. Sebala called Mr. Nunes to state that he was not coming in to work because he was sick. (Trans 1-8). Plaintiff's birthday was one day prior to this sick day request. (Trans 1-9). Mr. Nunes and Mr. Sebala had a verbal altercation over the phone about plaintiff's request for sick leave. Plaintiff admits talking loud to his supervisor during this argument. (Trans 1-173; 2-25; DEX 204).

11. On 29 August 2002, plaintiff Sebala came into work

and met with Mr. Nunes.  Plaintiff attempted to demonstrate how sick he was and expressed anger towards Mr. Nunes for questioning his sick leave request.  Mr. Sebala yelled or raised his voice at his supervisor during this exchange. (Trans 1-60; DEX 204).  Plaintiff stormed out of the office, continuing his sick leave absence. (Trans 1-60).

    12.  Mr. Sebala agrees that it is not appropriate to yell or raise his voice at his supervisor.  (Trans 2-44).

    13.  Mr. Nunes prepared a Memorandum for Record to document this incident on 5 September 2002.  (PEX 75 at 76-77; DEX 205).  Mr. Nunes also forwarded this document with an annotation on Mr. Sebala's Report on Individual Person, AF Form 971 to be maintained in his personnel file. (PEX 75 at 87; DEX 201).

    14.  Mr. Nunes believed he had the authority to question employees about the reason they needed sick leave and ask them to come in if possible based on his position as the shop supervisor. [Trans 1-15 to 16].  Mr. Nunes attempted to resolve the issue with Mr. Sebala on September 5, 2002 but plaintiff refused and stated "it is not over." (Trans 1-16).

    15.  On or about 12 December 2002, plaintiff Sebala was also insubordinate towards Mr. Eassie Soares-Haae, who was the acting supervisor at the time of the incident.  (PEX 75 at 78).  Plaintiff said "What, you like something" to Mr. Soares in a manner Soares perceived as threatening.  (Trans

1-75; 1-81).  Mr. Soares documented this in 2005 after being asked to do so by Mr. Nunes. (Trans 1-77).

16.  Mr. Eassie Soares-Haae observed that plaintiff was proficient in working on tires but had trouble in the automotive work that were a part of his duties.  (Trans 1-75).  Mr. Sebala was not called upon to perform all of his required job duties.  (Trans 2-18 to 19).

17.  Plaintiff Sebala testified that Mr. Nunes did not like him because plaintiff filed a union grievance against Mr. Nunes in the past. (Trans 1-185).  Plaintiff Sebala also believed Mr. Nunes did not like him and had a personal grudge against him because of the sick leave incident in August 2002.  (Trans 2-26)  Plaintiff believes that Mr. Nunes discriminated against him because he did not like him. (Trans 2-27).

18.  After plaintiff's one year temporary appointment ended in January 2003, he no longer worked at Hickam Air Force Base.  (Trans 1-23).

19.  After plaintiff Sebala left Hickam AFB, his previous position opened up as a permanent Mobile Equipment Servicer position.  Mr. Nunes was the selecting official for the Mobile Equipment Servicer, WG-5806-06, permanent position that was announced in March 2003.  (See Core Personnel Description PEX 12A-D; DEX 210).  The permanent position was advertised on USAJobs.com as is common practice to advertise Air Force Civilian jobs.  (PEX 75 at 44-51; DEX

209).  Anyone could go on this website to apply for the position if they wanted to.  (Trans 1-64).  All applications initially go to the Civilian Personnel Office for review before the selecting official sees them. (Trans 1-65).

20.  Mr. Nunes asked Mr. Christopher Vargas (DOB May 16, 1977) to apply for the permanent position.  Mr. Nunes also asked members of his shop at a daily staff meeting to let people they know that those interested in the position could go on the website to apply.  (Trans 1-27).

21.  Plaintiff Sebala applied for the position as a Mobile Equipment Servicer, WG-5806-06, with the 15th LRD/LGR at Hickam AFB, HI.  (See PEX 75 at 60-63; DEX 214).

22.  Although five people applied, Mr. Nunes received the applications of the top three applicants, including plaintiff, Mr. Christopher Vargas, and Mr. Robert McCollum. (See PEX 75, at 56-65 and DEX 213, 214, and 215).

23.  Plaintiff's application included an application and resume that Mr. Nunes' in part, utilized in making a hiring decision.  (See PEX 75 at 60-63; DEX 214).  Mr. Nunes also took into account his past working experience with Mr. Sebala.

24.  Mr. Vargas supplied a resume with his application. (See PEX 75 at 56-60; DEX 213).  Mr. Vargas also had been employed by the Air Force and had received positive documentation of his performance evaluation.  (See DEX 222 and DEX 223).  Mr. Nunes also knew about Mr. Vargas's

previous work experience as a mechanic, painter and tire man based on prior conversations with Mr. Vargas. (Trans 1-93). Mr. Nunes knew Mr. Vargas worked at Laidlaw Transit performing the duties detailed on his resume. (Trans 1-112). Mr. Nunes knew Mr. Vargas had been in the Army and his training and duties included removing split rims and tires from heavy vehicles. (Trans 1-113). Mr. Nunes knew Mr. Vargas worked for eight or nine years in his stepfather's automotive shop painting, doing tire work and vehicle maintenance. (Trans 1-113 to 114).

25. Mr. Randall Nunes hired Mr. Christopher Vargas into the aforementioned position. (See DEX 212). Mr. Nunes made this decision by looking at each individual's qualifications and each person as a whole. He looked at the character a person has, what kind of worker they are, their work ethic, relationship with management, relationship with fellow co-workers, and attitude towards the mission at Hickam AFB. (Trans 1-34 to 39)

26. Mr. Nunes had one year to observe both candidates. Plaintiff Sebala worked directly for Mr. Nunes, and Mr. Vargas worked in the stall directly next to Mr. Nunes' office. (Trans 1-39). Although Mr. Vargas did not work for Mr. Nunes, Mr. Nunes had an opportunity to observe Mr. Vargas working five to ten times per day due to the location of the work stalls. (Trans 1-39). Mr. Nunes observed Mr. Vargas to have "good work ethics, a good attitude towards

his job, he had no problems with any employees, any fellow workers. He just showed a lot of positive things about his job that he portrayed when he worked everyday. He was a hard worker." (Trans 1-39).

27. Mr. Nunes also observed that Mr. Vargas had a positive relationship with management. When assigned a task, Mr. Vargas would take the job and do it. He did not backtalk. (Trans 1-40).

28. During the same period of time, Mr. Nunes observed plaintiff Sebala standing around and doing nothing on a couple of occasions. (Trans 1-66). On those occasions, Mr. Nunes approached Mr. Sebala and asked him if he needed a job, to which Mr. Sebala responded in the affirmative. Mr. Nunes expected his employees to take initiative to find work to do, but Mr. Sebala failed to live up to this expectation. (Trans 1-71).

29. Mr. Nunes observed both Mr. Sebala and Mr. Vargas's attitude towards the Air Force mission. Mr. Nunes thought Mr. Vargas was very flexible and when priorities changed because of the mission, Mr. Vargas adapted and did not become angry. (Trans 1-52).

30. Mr. Vargas had previously received positive performance feedbacks before he was hired into the permanent mobile equipment servicer position. (PEX 13 - 13A; DEX 223 and PEX 16; DEX 222).

31. Plaintiff Sebala was notified he was not selected

for the position on April 7, 2003, via letter. (See PEX 59A; DEX 218). Mr. Sebala then contacted Mr. Nunes for an explanation of why he was not hired. (See PEX 59; DEX 219). Mr. Nunes replied that he hired the <u>best</u> qualified applicant.

    32. Mr. Vargas began work in the Mobile Equipment Servicer, WG-5806-06, position in May 2003.

    33. Mr. Nunes testified that he did not make any statement to Mr. Michael Oyadomori about selecting Mr. Vargas because he was young and had a family. During the trial, Mr. Oyadomori admitted that in his own deposition, when he was asked if Mr. Nunes said anything about why he gave the position to Mr. Vargas, Mr. Oyadomori answered "No." (Trans 1-141). Mr. Oyadomori was asked again during the deposition if he heard Mr. Nunes say anything about why he gave the position to Mr. Vargas and he responded that he had already answered that question earlier. (Trans 1-144). When asked to clarify why his sworn deposition testimony was different from his trial testimony, Mr. Oyadomori claimed that he had not understood what position was being described. (Trans 1-142). Mr. Oyadomori also contradicted plaintiff's testimony that Mr. Oyadomori told plaintiff about the conversation and that other people in the shop heard it. (Trans 1-31). Despite the allegation that others heard Mr. Nunes make this statement, not one other person testified to this during the trial.

34. Mr. Oyadamori's testimony and demeanor strongly suggested a bias against Mr. Nunes. Mr. Nunes had disciplined Mr. Oyadomori in the past. (Trans 1-29; 1-122). Mr. Nunes disciplined him for disrespect to a supervisor. (Trans 1-149). Mr. Oyadomori disagreed with the discipline he received and admitted to being upset at Mr. Nunes and Mr. Peris for receiving it. (Trans 1-151).

35. Mr. Oyadomori himself admits to having only intermittent respect for his supervisor, Mr. Nunes. (Trans 1-149). Further, Mr. Nunes would have no reason to confide in Mr. Oyadomori about his hiring decisions. (Trans 1-67). As further demonstration of Mr. Oyadomori's bias, after Mr. Vargas was deposed, Mr. Oyadomori has not spoken to him and gave him the "cold shoulder." (Trans 1-120). Looking at the evidence as a whole and having observed Mr. Oyadomori's testimony, I do not find Mr. Oyadomori to be a credible witness. I do not find the Mr. Nunes made the statement that he hired Mr. Vargas because he was young and had a family.

36. Mr. Vargas had not received any disciplinary action prior to being hired into the permanent mobile equipment servicer position. (Trans 1-118). Mr. Nunes did not know nor could he have known that Mr. Vargas would have disciplinary problems after receiving the position. Further, Mr. Vargas demonstrated more skill on the mechanical side of the job than plaintiff. (Trans 1-83).

37.   Plaintiff Sebala applied for and received unemployment compensation after his temporary employment ended in January 2003.  He received unemployment compensation for about one year.  He was thereafter employed with Miller Industries for about three months.  His employment with Miller Industries ended after he had a verbal confrontation with the shop foreman.  Mr. Sebala then worked odd jobs and started babysitting his grandchildren full-time.  (Trans 2-36).  He was unable to apply for jobs because of his voluntary obligation to babysit.  (Trans 2-38).  Even when selected for an interview for a paying job, he refused to go in order to care for the grandchildren without pay.  (Trans 2-47).

38.   Mr. Nunes was the selecting official who selected plaintiff for the temporary Mobile Equipment Servicer, WG-5806-06 in January 2002.  Mr. Nunes was also the selecting official who did not select plaintiff for the permanent Mobile Equipment Servicer, WG-5806-06 in April 2003.  I find that based on the facts, it is unreasonable to assert the selecting official developed a discriminatory animus towards persons over 40 years of age in a little over a year.

## CONCLUSIONS OF LAW

1.   Plaintiff has established all elements of their prima facie case by a preponderance of the evidence.

2.   Defendant has established legitimate non-discriminatory reasons for their hiring decisions regarding

-12-

the plaintiff.

3. Plaintiff failed to establish that the defendant's non-discriminatory reasons for their hiring decision is pretext for unlawful age discrimination.

4. As a result of plaintiff's failure to establish the defendant's nondiscriminatory reasons were pretextual, plaintiff is not entitled to prevail.  In accordance, the plaintiff is not entitled to damages of any sort and costs shall be assessed against plaintiff.

DATED: April 17, 2006, at Honolulu, Hawaii.

Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney

/s/ R. Michael Burke
_____
R. MICHAEL BURKE
Assistant U.S. Attorney


Of Counsel:

ERIN BREE WIRTANEN, Maj, USAF
Trial Attorney
Air Force Legal Services Agency
General Litigation Division
1501 Wilson Blvd., 7th Floor
Arlington, VA 22209

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PETER G. SEBALA, | ) | CIVIL NO. 04-00404 SPK-LEK |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES G. ROCHE, DR., | ) | |
| SECRETARY, DEPARTMENT OF THE | ) | |
| AIR FORCE, | ) | |
| | ) | |
| Defendant. | ) | |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served upon the following at their last known addresse:

Served by First Class Mail

Venetia K. Carpenter-Asui, Esq.   April 17, 2006
Haseko Center
820 Mililani Street, Suite 812
Honolulu, Hawaii  96813

Attorney for Plaintiff
Peter G. Sebala

DATED: April 17, 2006, at Honolulu, Hawaii.

/s/ Myra Y. Peterson