AO 450 (Rev. 5/85) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| PETER G. SEBALA, | JUDGMENT IN A CIVIL CASE |
| Plaintiff(s), | Case: CV 04-00404SPK-LEK |
| V. | FILED IN THE UNITED STATES DISTRICT COURT DISTRICT OF HAWAII |
| RANDELL NUNES; JAMES G. ROCHE, DR., SECRETARY, DEPARTMENT OF THE AIR FORCE, | July 6, 2006 At 4 o'clock and 00 min p.m. SUE BEITIA, CLERK |
| Defendant(s). | |

[ ] **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

[✓] **Decision by Court.** This action came to trial before the Court. The issues have been tried and a decision has been rendered.

IT IS ORDERED AND ADJUDGED Judgment shall enter in favor of Defendant James G. Roche, in his capacity as Secretary of the United States Air Force, and against Plaintiff Peter G. Sebala pursuant to the "Findings of Fact and Conclusions of Law" filed on July 6, 2006.

cc:  all counsel of record

| | |
|---|---|
| July 6, 2006 | SUE BEITIA |
| Date | Clerk |
| | (By) Deputy Clerk |

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PETER G. SEBALA, ) | CIV. NO. 04-00404 SPK/LEK |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| RANDELL NUNES; JAMES G. ) | |
| ROCHE, DR., SECRETARY, ) | |
| DEPARTMENT OF THE AIR FORCE, ) | |
| ) | |
| Defendants, ) | |
| _____ ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court conducted a non-jury trial in this case on February 7 and 8, 2006. Venetia Carpenter-Asui appeared for Plaintiff Peter Sebala ("Plaintiff" or "Sebala"). Erin Bree Wirtanen, Major, United States Air Force, and Assistant United States Attorney R. Michael Burke appeared for Defendant James Roche, in his capacity as Secretary of the Air Force ("Defendant" or "the Air Force").[1] After a period for preparation of transcripts, the parties filed post-trial proposed findings and conclusions in April of 2006.

Pursuant to Fed. R. Civ. P. 52(a), the following constitute the Court's

---

[1] Defendant Nunes was dismissed earlier by stipulation.

1

Findings of Fact ("Findings") and Conclusions of Law ("Conclusions"). To the extent any Findings as stated may also be deemed to be Conclusions, they shall also be considered Conclusions. Similarly, to the extent any Conclusions as stated may be deemed to be Findings, they shall also be considered Findings. See In re Bubble Up Delaware, Inc., 684 F.2d 1259, 1262 (9th Cir. 1982) ("The fact that a court labels determinations 'Findings of Fact' does not make them so if they are in reality conclusions of law."); Tri-tron Int'l. v. A.A. Velto, 525 F.2d 432, 435 (9th Cir. 1975).

## A. OVERVIEW

This is an age discrimination case brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 633a et seq. Plaintiff was not selected for a permanent civilian position as a Mobile Equipment Servicer at Hickam Air Force Base. (He had previously held a temporary, one-year, position as a Mobile Equipment Servicer.) The person selected in lieu of Plaintiff for the permanent position, Christopher Vargas, was 25 years old at the time; Plaintiff was 53 years old. Plaintiff claims unlawful age discrimination in his non-selection.

The Court previously denied a motion for summary judgment because there was a triable question of fact as to intentional discrimination. Although the Air Force proffered legitimate non-discriminatory reasons for not hiring Plaintiff (e.g.,

2

he was less qualified, he had prior incidents of insubordination), there was some possible evidence of pretext or direct evidence of a violation. In particular, although the context was not clear to the Court at the summary judgment stage, the deposition testimony of Michael Oyadomori (to the effect that the Air Force's hiring decision-maker Randall Nunes hired Vargas because "he was younger and he's married, got family"), created a question of fact. Although the Air Force said one of the reasons for not hiring Sebala was because he had been disrespectful and insubordinate, one of Sebala's rating sheets (from his temporary position) had a handwritten comment "good job!" Again, the context was not clear at the summary judgment stage. Thus, the non-jury trial focused on whether any unlawful age discrimination occurred, i.e., whether the Air Force's proffered reason was pretextual and whether there was sufficient evidence of unlawful discrimination. See, e.g., Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-43 (2000).

For the reasons set forth, the Court finds Plaintiff Sebala did not prove by a preponderance of the credible evidence that any age discrimination occurred in the Air Force's non-selection of him for the permanent Mobile Equipment Servicer position. Rather, the Air Force had legitimate, non-discriminatory, reasons for its hiring decision. The testimony of Oyadomori, while sufficient at a summary

3

judgment stage to create a question of fact for trial, was ultimately vague and unconvincing. Similarly, even though one of Sebala's prior rating sheets had a handwritten comment "good job!" on it, the Court is convinced after hearing Nunes and Sebala testify that the comment was merely for managerial purposes, not an indication that Sebala was a superior worker overall. In any event, Vargas had higher prior job ratings than Sebala. And Vargas's post-hiring ratings or performance have little if anything to do with whether Sebala was subject to discrimination on the basis of age when he was not selected in 2003. There were ample non-discriminatory reasons for hiring Vargas over Sebala. The Air Force's non-hiring of Sebala was not done in violation of 29 U.S.C. § 633a.

B. FINDINGS OF FACT.

1. Plaintiff Peter Sebala was born on August 27, 1949. [Defendant's Exh. 200]. Sebala was 53 when not selected for a permanent "mobile equipment servicer" position with the Air Force in April 2003. (Sebala had the same or similar position for a year on a temporary basis.) [Defendant's Exh. 200, 203].

2. The permanent position was WG-5806-06 with the 15th LRD/LGR at Hickam Air Force Base, Hawaii. Sebala was not selected on April 7, 2003, when the position was filled by Christopher Vargas. [Defendant's Exh. 212, 218]. Vargas was born on May 16, 1977, and was 25 years old when he was hired.

4

[Transcript, Day 1, at 90].

3. The selecting official for the permanent Mobile Equipment Servicer position was Randall Nunes. [Defendant's Exh. 210, 212; Tr., Day 1, at 27; Day 2, at 68]. Nunes has worked for the Air Force for over 30 years. He was born in 1949, the same year as the Plaintiff. He is currently the "automotive shop supervisor for the general purpose shop and the tire shop." [Tr., Day 1, at 5].

4. Prior to January 2002, Nunes had an opening for a temporary Mobile Equipment Servicer. Nunes hired Sebala for the temporary position. [Tr., Day 1, at 57]. Nunes was Sebala's direct supervisor while Sebala was employed as a temporary Mobile Equipment Servicer from January 2002 to January 2003. [Tr., Day 1, at 6].

5. Nunes observed Sebala's work ethic and demeanor on a day-to-day basis for one year. Nunes noticed instances where Sebala failed to demonstrate a strong work ethic and had a poor attitude towards authority. [Plaintiff's Exh. 75-76; Exh. 75-87].

6. While Sebala was a temporary employee, he received a "progress review" in October 2002 (Air Force Form 860B), documenting in some aspects his midterm performance. [Defendant's Exh. 207]. All elements were marked in the middle of an achievement scale. The rating given to Sebala was the lowest rating Nunes has

5

ever given to an employee under his supervision. [Tr. Day 1, at 59]. The form has a comment "Has met required skill level" followed by a handwritten comment "Good Job!" [Defendant's Exh. 207.] The handwritten comment by Nunes was written in an attempt to instill positive feelings and encourage Sebala to do his best. [Tr., Day 1, at 59-60]. It did not necessarily mean his work was superior relative to others.

7. While Sebala was a temporary employee, there were at least two instances of "insubordinate" (or perceived insubordinate) behavior. [Defendant's Exh. 201, 204, 205]. Although Sebala claimed that Nunes never spoke to him about his attitude or work, [Tr. Day 1, at 171], this claim is contradicted by Sebala's own notes, [Plaintiff's Exh. 53A-D, 60A-B], as well as Nunes's credible testimony. [Tr. Day 1, at 60-61]. Plaintiff's testimony also indicates he knew Nunes was unhappy with him after he called in sick and raised his voice to Nunes on or about August 28, 2002. [Tr. Day 1, at 172-176]. Nunes and Sebala had a verbal altercation ("yelling at each other") over the phone, and later at work, regarding this incident. [Id.; Day 1, at 60; Day 2, at 24, Defendant's Exh. 204]. The sick leave incident was documented in Plaintiff's personnel file. [Plaintiff's Exh. 75-76; Defendant's Exh. 201, 205].

8. On or about December 12, 2002, Sebala was also insubordinate towards

6

Mr. Eassie Soares-Haas, who was the then acting supervisor. [Plaintiff's Exh. 75-78]. Sebala said in an angry voice "What!, you like something?" to Soares in a manner Soares perceived as intimidating. [Tr., Day 1, at 75 & 81]. Soares talked to Nunes about the incident shortly thereafter, but did not document it until later when asked to do so by Nunes. [Tr., Day 1, at 76-77].

9. After Sebala's one-year temporary appointment ended in January 2003, he no longer worked at Hickam Air Force Base. [Tr. Day 1, at 23]. After Sebala left Hickam AFB, his previous position opened up as a permanent Mobile Equipment Servicer position. It was announced in March 2003. [Defendant's Exh. 209, 210]. The position was open for anyone to apply. All applications go to the civilian personnel office for review before the selecting official (in this case, Nunes) sees them. [Tr. Day 1, at 64-65; Day 2, at 68].

10. Sebala applied for the permanent mobile equipment supervisor position. [Defendant's Exh. 214]. Four others also applied. Nunes previously told Vargas to apply. [Tr. Day 1, at 27]. Nunes received the applications of the top three applicants who were Sebala, Christopher Vargas, and Robert McCollum. [Plaintiff's Exh. 75-56 to 75-65; Defendants Exh. 213, 214 and 215]. Nunes hired Vargas. [Defendant's Exh. 212].

11. Vargas had been working as a temporary civilian employee at Hickam

7

Air Force Base in a stall directly next to Nunes' office. [Tr. Day 1, at 39]. Vargas had been working in the automobile body section as a sandblaster who was "on loan to the allied trade section." [Id.; Day 1, at 40]. Nunes observed Vargas daily, characterizing his work ethic as "good, a good attitude towards his job, he had no problems with employees." [Tr., Day 1, at 39]. Nunes said Vargas had "a positive attitude," he was "a hard worker," "very determined to get his work done." [Tr., Day 1, at 40].

12. Vargas had received positive performance evaluations. [Defendant's Exh. 222, 223]. The marks were higher than Sebala's (although the rater was different). Vargas had previous work experience as, among other things, a mechanic, painter, and some work with tires. [Tr. Day, 1, at 93]. Vargas had worked in the Army with training and duties including removing split rims and tires from heavy vehicles. [Tr. Day 1, at 113]. He also worked 8 or 9 years in his stepfather's automotive shop doing painting, tire work, and vehicle maintenance. [Tr. Day 1, 113-114].

13. Since being hired for the permanent position, Vargas has been counseled for inappropriate conduct in the workplace in 2005. [Plaintiff's Exh. 10]. The Court considers post-hiring performance of Vargas (i.e., post-March 2003 performance) to be irrelevant towards whether Nunes or the Air Force discriminated

8

against Sebala in his non-selection in March/April 2003 for the permanent Mobile Equipment Servicer position.

14. Michael Oyadomori, who was a co-worker with Sebala, testified at trial that he asked Nunes why he did not hire Sebala for the permanent position. Oyadomori testified that Nunes told him (although the context was never made clear), among other things, "[Vargas is] younger and he has family -- is going get a family. Going to have a family[.]" [Tr. Day 1, at 136-37]. This trial testimony contradicted Oyadomori's earlier deposition testimony, where Oyadomori had testified that he never heard Nunes himself say words to that effect. [Tr. Day 1, at 141]. (Perhaps Oyadomori had heard someone else say that Nunes had said words to that effect.) The reliability of Oyadomori's testimony is questionable; he testified at trial that his memory in this regard was "shady" or "shaky." [Tr. Day 1, at 146]. In any event, Nunes denies making such statements. [Tr. Day 1, at 67, 72].

15. Oyadomori had apparent reason to be biased against Nunes. Nunes had disciplined him in the past, and Oyadomori testified that he felt the discipline was unwarranted. [Tr. Day 1, at 122, 151]. He also testified that he had "intermittent" respect for Nunes as a supervisor. [Tr. Day 1, at 149]. Considering the potential for bias and Oyadomori's demeanor at trial, the Court does not credit Oyadomori's testimony that Nunes said (to anyone) words to the effect that Nunes hired Vargas

9

because he was young, much less younger than Sebala. It is unlikely Nunes said such words, but even if he did, it would not require a finding that unlawful discrimination took place by the Air Force in its non-selection of Sebala.

## C. CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and 29 U.S.C. § 633a(c).

2. By order of March 16, 2005, the Court tolled necessary statute of limitations to allow Sebala's remaining claims to proceed, despite being a few weeks late in exhausting certain administrative remedies.

3. Defendant Randell (sic) Nunes was dismissed by stipulation and order of March 7, 2005.

4. Plaintiff's national origin discrimination claim was dismissed by stipulation and order of September 14, 2005. Only Plaintiff's age discrimination claim remained for trial.

5. Plaintiff established a prima facie claim under 29 U.S.C. § 633a. He had sufficient evidence (either by direct evidence or under the indirect-evidence test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)) of the prima facie elements of his claim. In response, the Air Force proffered legitimate, non-discriminatory reasons for its non-selection of Sebala. There was some

10

evidence at the summary judgment stage that, construed in Plaintiff's favor, indicated a question of fact as to pretext. At that point, any presumption of discrimination "drops out of the picture" and the question for trial was whether the Air Force intentionally and unlawfully discriminated against Sebala on the basis of age in its non-selection of him for the permanent Mobile Equipment Servicer position. See generally Reeves, 530 U.S. at 142-43.

6. Plaintiff Sebala failed to prove by a preponderance of the evidence that the Air Force violated 29 U.S.C. § 633a, or otherwise discriminated against him on the basis of age, in its non-selection of Sebala for the permanent Mobile Equipment Servicer position. No unlawful discrimination occurred.

### D. CONCLUSION

As no unlawful discrimination occurred, judgment shall enter in favor of Defendant James G. Roche, in his capacity as Secretary of the United States Air Force, and against Plaintiff Peter G. Sebala.

IT IS SO ORDERED.

DATED: July 6, 2006.



_Samuel P. King_
Samuel P. King
Senior United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was or will be duly served upon the following by hand-delivery and/or U.S. Mail, postage prepaid as follows:

TO:   R. MICHAEL BURKE, ESQ.
Office of the U.S. Attorney
PJKK Federal Building, Room 6-100
300 Ala Moana Blvd.
Honolulu, Hawaii 96850

Attorney for Defendant-Appellee
James G. Roche, Dr., Secretary,
Department of the Air Force

DATED:   Honolulu, Hawaii, _____7/20_____, 2006.

_____
VENETIA K. CARPENTER-ASUI
Attorney for Plaintiff-Appellant
PETER G. SEBALA